SMITH MEAL COMPANY, INC. *vs.* STATE TAX COMMISSION.

Suffolk.   March 10, 1966. — April 4, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Taxation,* Corporate excise.

Where a domestic business corporation in its excise return for 1959 declared as its only items of gross income interest allocated entirely to Massachusetts by G. L. c. 63, § 37, and a capital gain from sales outside of Massachusetts excluded from allocation to Massachusetts by § 37, and showed allowable deductions, and ascertained the portion of its net

income allocated to Massachusetts by a formula reflecting reasonably and proportionally an application of the deductions to the gross income allocated to Massachusetts, treatment by the commissioner of corporations and taxation of the interest item as being the corporation's net income allocated to Massachusetts and the measure of its excise under § 32 (a) (2), although the interest item was substantially in excess of total net income, without consideration of allowable deductions, was an allocation of gross income as the measure of the corporation's excise and was without statutory basis, and an additional excise assessed on the corporation by the commissioner on the basis of such treatment by him must be abated.

APPEAL from a decision by the Appellate Tax Board.

*Chester M. Howe* for the appellant.

*Herbert E. Tucker, Jr.,* Assistant Attorney General (*Vincent J. Celia* with him), for the State Tax Commission.

CUTTER, J. This is an appeal from a decision for the commission by the Appellate Tax Board. The board denied partial abatement of so much of the 1959 business corporation excise (G. L. c. 63, § 32) assessed upon the appellant (Company) as was measured by net income. The board did not file an opinion explaining its decision. The record includes (a) a stipulation, (b) copies of the tax return and the application for abatement, and (c) the pleadings before the board.

Company is a Massachusetts corporation. It filed its 1959 excise return for its taxable year ended June 30, 1959, and paid $7,992.71, the excise computed on the basis of the return. On April 17, 1962, the commissioner assessed the 1959 excise in the sum of $9,437.33, including interest of $193.86. It is not contended that there has been improper computation of that portion of Company's 1959 excise based upon its "corporate excess." See G. L. c. 63, § 32 (a) (1), as amended through St. 1957, c. 577, § 1. The applicable statutes are set out in the margin, with language here of special significance italicized.[1]

---

[1] General Laws c. 63, § 32 (a), as amended in 1957, requires each domestic business corporation to "pay, on account of each taxable year, an excise" measured in part by "(2) An amount equal to . . . [a] per cent of its net income determined to be taxable in accordance with the provisions of this chapter." No question concerning the rate of tax is here presented. In c. 63, § 30, par. 5 (as amended through St. 1933, c. 327, § 3), "Net income" is defined as "the gross income from all sources, without exclusion, for the

Smith Meal Co. Inc. *v.* State Tax Commission.

Company's 1959 excise return showed the following items of gross income and expenses: —

INCOME

*Item*

| | | |
|---|---|---|
| 8 — Interest | $51,105.91 | |
| 11 — Rents (charter rental) | 1,000.00 | |
| 13 (b) — Net long term capital gain | 5,160.25 | |
| Total of above | | $57,266.16 |

DEDUCTIONS

*Item*

| | | |
|---|---|---|
| 19 — Repairs | $ 1,762.20 | |
| 22 — Massachusetts excise | 10,550.62 | |
| 26 — Depreciation | 3,670.60 | |
| 30 — Other deductions | 5,372.07 | |
| | | 21,355.49 |

32 — Taxable income before net operating loss deduction and special deductions (essentially "net income" as defined in § 30, par. 5, see fn. 1).                 $35,910.67

Company in its return treated items 8 and 13 (b) as entering into the allocation process.   The gain of $5,160.25

taxable year, *less the deductions,* other than losses sustained by the corporation in other fiscal or calendar years and other than dividends, allowable by the federal revenue act applicable for said taxable year." Section 37 (as amended through St. 1931, c. 426, § 187) reads: "The commissioner shall determine, in the manner provided in this and the following section, *the part* of the *net income* of a domestic business corporation derived from business carried on within the commonwealth. The following classes of income shall be allocated as follows: (a) Interest and dividends *included in net income* as defined in section thirty of this chapter shall be allocated to this commonwealth. (b) Gains realized from the sale of capital assets, if such assets consist of intangible property or if they consist of real estate or tangible personal property situated in the commonwealth, shall be allocated to this commonwealth. (c) Gains received from the sale of capital assets, if such assets consist of real estate or tangible personal property situated outside the commonwealth, shall not be allocated in any part to this commonwealth." Section 38 (as amended through St. 1933, c. 342, § 3) reads in part, "Income of the classes described in the preceding section having been allocated, *the remainder of the net income* as defined in section thirty shall be allocated as follows: . . . ." No balance of net income here remains to be distributed in accordance with the formula stated in § 38 which need not be quoted. Some of the sections quoted above have been amended since 1957. Section 38A (as amended through St. 1930, c. 220, § 4) reads, "The net income of a domestic corporation allocated to this commonwealth shall be its net income subject to tax under this chapter."

was from the sale of airplanes situated outside of Massachusetts and was not allocated to Massachusetts. The interest income was allocated entirely to Massachusetts.[2] This produced total allocable gross income of $56,226.16 of which $51,105.91 was allocable to Massachusetts. Company accordingly allocated the $35,910.67 of its net income (gross income less deductions) by the formula shown in the margin.[3] This produced an excise income measure of $32,617.25. The commissioner made no allocation of net income whatsoever, but simply treated Company's gross income from interest of $51,105.91 as being its net income allocated to Massachusetts. The theory on which the commissioner felt this action to be justified is not clear from the record, the commission's brief, or the arguments.

The result is the extraordinary one that the commissioner has decided Company's net income measure of its 1959 excise to be about $15,000 in excess of its total *net* income, thus constituting an allocation of *gross* income, and giving no effect whatsoever to the deductions allowable, and disregarding the legislative intention (see c. 63, § 30, par. 5, quoted, fn. 1) that gross income shall be diminished by deductions. The propriety of the deductions claimed by Company on its return does not seem to be questioned. The formula used by Company reflects reasonably and proportionately an application of these deductions to[4] the

---

[2] The reasons for nonallocation of item 11, $1,000 for charter rental, are not indicated in the record, but the correctness of this treatment of the item does not appear to be disputed.

[3]
$$\frac{51,105.91}{56,266.16} \times \$35,910.67 = \$32,617.25$$

[4] It is argued that, for many years after the enactment of St. 1933, c. 327, § 3, altering the definition of net income in c. 63, § 30, par. 5, for reasons without present relevance (see 1932 Rep. Commr. of Corps. & Taxn. p. 93; 1933 House Doc. No. 69, pp. 6–7; Nichols, Taxation in Massachusetts [3d ed.] 560–561, 596–597), the tax department applied a formula like that used by Company. A change of departmental practice about 1960 is mentioned in both briefs, although not established by the record (see fn. 5, *infra*). No new legislation is referred to as having supported this change. We give no weight to these matters because they are insufficiently established in the record. The administrative practice at different periods, if proved, might have been of some significance. See *DeBlois* v. *Commissioner of Corps. & Taxn.* 276 Mass. 437, 440, where this court gave slight weight to the commissioner's then recent interpretation of tax statutes long construed otherwise.

gross income allocated to Massachusetts in this relatively simple situation where Company had no gross income subject to formula allocation under § 38 (see fn. 1).

The precise question here presented has not been decided by this court in the forty-seven years since the first enactment of our present form of corporation excise (see fn. 7, *infra*). In *State Tax Commn.* v. *John H. Breck, Inc.* 336 Mass. 277, 279–285, however, in reviewing generally the relevant statutes, we said (pp. 283–284), ''The tax . . . is 'a single excise measured by the sum of a percentage on . . . corporate excess added to a percentage on . . . net income as those terms are defined in the act.' '' We also said (pp. 284–285), ''The excise imposed by § 32 is not a tax upon or measured by *gross* receipts. So far as its net income measure is concerned, the tax under § 32 will be zero (a) unless a domestic corporation subject to § 32 has a *net* income, in the sense that its gross income exceeds the expenses (with minor exceptions) allowed as deductions under the Federal income tax law, and (b) unless some of that net income, if there is a net income, is allocable to Massachusetts under the apportionment formula found in §§ 37 and 38. The purpose of the formula (§§ 37 and 38) is, of course, to limit the net income measure of the excise to that reasonably attributable to activities within or closely associated with Massachusetts, so as fairly to reflect the annual benefit to the taxed corporation of its corporate privileges (including their exercise, if exercised) under Massachusetts law.''

Section 37 starts out by directing the commissioner to ''determine'' as provided in that section and § 38, *''the part* of the [corporate] *net income* . . . derived from business carried on''* in Massachusetts. The section, however, in terms allocates only certain items of *gross* income, viz. (a) interest and dividends, which are assigned to Massachusetts; (b) gains realized from the sale of intangible property and from the sale of Massachusetts real estate and tangible personal property, also allocated to Massachusetts; and (c) gains from the sale of real estate and tangibles situated outside of Massachusetts, which are not

allocated to Massachusetts. No specific provision of § 37 expressly provides for (a) allocation of allowable deductions or of losses, wherever realized, to these items thus specifically allocated or (b) use of them as offsetting items. Nevertheless, at least with respect to corporations having "black ink" amounts of specifically allocated gross income exceeding, in the aggregate, total net income as defined in § 30, par. 5 (see fn. 1), some such allocation or offsetting of deductions and losses, reasonable in the circumstances, must be implied, if § 37 is not to result in an excise measured by *gross* income rather than by allocation of *net* income. This is certainly true in situations like or comparable to those presented by this case and by *Cabot Corp.* v. *State Tax Commn., post,* 516. The practical difficulty thus arising under § 37 has been recognized in some degree by one text writer. See Stuetzer, Massachusetts Taxation of Corporations (6th ed.) 14, fns. 55, 56.[5]

In the recent report of the Special Subcommittee on State Taxation of Interstate Commerce, Committee on the Judiciary, House of Representatives, 88th Congress, 2d Session, House Rep. 1480, vol. 1, pp. 197–206, 210–237 (1964), it was said at p. 217, "The ultimate aim of all schemes for the division of income is the determination of how much *net* income is to be assigned to a particular State for tax purposes. Net income is, of course, gross income less allowable deductions. Consequently, in the process of dividing income for tax purposes, deductions as well as gross income must be divided and assigned to the various States in order to determine the amount of net income which is taxable by each."[6]

Chapter 63 has not made any clear provision for such a division. Reading this excise statute as a whole, however, we find no adequately expressed intention in § 37 or else-

---

[5] Relevant discussion is found in Nichols, Taxation in Massachusetts (3d ed.) 605–607; Barrett and Bailey, Taxation, §§ 823–826, esp. at p. 423, and 1966 Supp. at pp. 43–50, referring to a description of recent departmental practice. Beyond deciding the precise issues here presented, there is no occasion now to determine to what extent that described practice is in conformity with the tax statute. See fn. 4, *supra*.

[6] The report proceeds, "If a State divides all income by formula apportionment, there are very few problems in dividing deductions. The total of allow-

where to measure the excise under § 32 (a) (2) by items of *gross* income or by any amount in excess of *net* income as defined in § 30, par. 5. Nothing in § 37 [7] authorizes more than steps in an allocation or apportionment of total *net* income. The interpretation of § 37 apparently here asserted by the commission would make the excise, so far as levied in respect of interest and dividends, essentially a classified property tax on that type of *gross* income (like G. L. c. 62, § 1, as amended), rather than an excise measured by a portion of total *net* income reasonably allocable to Massachusetts. If such a classified tax had been the legislative intention, much more explicit language would have been appropriate, in view of the doctrine of strict construction of tax statutes. See *State Tax Commn.* v. *Wheatland,* 343 Mass. 650, 653; *Boston Safe Deposit & Trust Co.* v. *State Tax Commn.* 346 Mass. 100, 105–106. The commissioner's action in assessing gross income in this case seems to us to have no statutory basis. We find in § 37 (a), even if read with § 38A, [8] no justification, in the circumstances

---

able deductions is subtracted from total gross income and the remainder is divided by formula apportionment. However, in most States, formula apportionment of all income is not the rule. Instead, some income is specifically allocated and the rest is apportioned by formula. Most of the problems, by far, in the division of deductions are occasioned by the need to determine what deductions are to be related to specifically allocable income." See also 89th Cong. 1st Session, H. R. 11798. Cf. Report of Committee on the Apportionment between States of Taxes on Mercantile and Manufacturing Business, Proc. Natl. Tax Assn. 1922, pp. 198–212, esp. at pp. 201 and 209. We recognize that c. 63 does not deal with the problem in as explicit terms or as completely as would be desirable.

[7] The legislative history of § 37 is not informative. Section 37 (a) has been in much the same form since the first enactment of the present corporation excise. See St. 1919, c. 355, Part I, §§ 2, 3, 6. See also 1919 House Docs. Nos. 1274, 1919, 1946, and 1919 Senate Docs. Nos. 92, 93, 313, pp. 23–26, 92 et seq. Section 6 of Part I provided, essentially as does G. L. c. 63, § 37 (a), as amended through St. 1931, c. 426, § 187, that the "commissioner shall determine . . . the proportion of the net income received from business carried on within this commonwealth," and then stated that interest and dividends which would be taxable under St. 1916, c. 269 (now G. L. c. 62, § 1, as amended) "if received by an inhabitant of this commonwealth, shall, in all cases be determined to be income taxable under this act." The words "in all cases," if they had any special significance, soon disappeared from the statute. See St. 1920, c. 415, § 2.

[8] Section 38A (see fn. 1) originated in St. 1926, c. 338, § 2, to provide for a special deduction, based upon the ownership of machinery used in manufacturing. This deduction was abolished by St. 1930, c. 220, § 4, and all but what is now found in § 38A was then deleted. Nothing in the 1930 amendments, or in their legislative history (see 1929 House Doc. No. 14, p. 7, and No. 22, p. 4; 1930 House Docs. Nos. 714, 1140, p. 6), suggests (a) that, where

revealed by this record, for allocating to Massachusetts more than a proportionate part of net income, and certainly no basis for thus allocating a sum in excess of total corporate net income. See the *Cabot Corp.* case, below.

The board's decision is reversed. Abatement of the additional excise is to be granted with interest. Company is to have its costs.

*So ordered.*

---

items of income, specifically allocated under § 37, exceed total net income, the allocations under § 37 are not to be allocations of *net* income, giving some reasonable effect to allowable deductions, or (b) that net income allocable to Massachusetts can exceed in any event a domestic corporation's total net income as defined in § 30, par. 5.