State Tax Commission *vs.* David P. Wheatland.

Suffolk.    October 2, 1961. — February 20, 1962.

Present: Wilkins, C.J., Spalding, Cutter, Kirk, & Spiegel, JJ.

*Taxation,* Income tax.    *Statute,* Construction.    *Constitutional Law,* Taxation.

Since the tax imposed in the period 1953 through 1956 by G. L. c. 62 on the income derived from property was in reality a tax on the property itself, §§ 5 (b), 6, relating to taxation of business income should be construed, in order to avoid constitutional doubts, as not taxing the net proceeds received during that period by an inhabitant of Massachusetts from the sale of standing timber on land located in another State. [652–654]

A gain realized from an isolated sale in 1955 of an interest in forest land was not taxable as business income under G. L. c. 62, §§ 5 (b), 6, as then in force.    [654]

Appeals from a decision by the Appellate Tax Board.

*Frederick D. Herberich,* for the taxpayer.

*Herbert E. Tucker, Jr.,* Assistant Attorney General, for the State Tax Commission.

Spalding, J.    These are two appeals from a decision of the Appellate Tax Board.    The case was submitted to the board on agreed facts, of which the following is a summary. The taxpayer, for the years 1953 through 1956, was a resident of this Commonwealth.    Throughout this period he owned undivided fractional interests in forest land located in Maine, which he acquired principally by inheritance and gift.    The coöwners consist of relatives, nonrelated individuals, fiduciaries, and corporations.    The taxpayer, along with certain of the coöwners, has given separate powers of attorney to Stephen Wheatland, also a coöwner, to handle timber operations including the making of contracts for the cutting of timber by others.    This agent maintains an office in Bangor and hires employees for office and field work. All books and records are kept by the agent in the Bangor office.    "A typical logging contract specifies the area in

which trees are to be cut, gives the period when the cutting must take place, grants to the loggers the right to enter the land, cut and remove the timber and states the amount and rates of payment for various types of timber cut and removed.'' Payments by loggers for timber cut and removed are made direct to the agent in Maine, and he remits the net proceeds, after deducting expenses and charges, to his principals. In 1955 the taxpayer sold a portion of his interest in the forest land. This sale was not made in the course of the timber operations described above. It was an isolated transaction carried out by the taxpayer himself and not through the agent.

All of this income (that received from the sale of timber, in the years 1953 through 1956, as well as that received from the sale of land) was assessed as business income taxable under G. L. c. 62, §§ 5 (b) and 6, by the commission, and the amounts so assessed were paid by the taxpayer. Thereafter, he applied for abatements, which were refused by the commission. The Appellate Tax Board held that the income received by the taxpayer from the sale of the standing timber was subject to taxation under G. L. c. 62, §§ 5 (b) and 6, as income derived from a trade or business. From this portion of the decision, the taxpayer has appealed. The board also held that the gain received by the taxpayer from the sale of land did not constitute income from a trade or business and was not taxable. From this portion of the decision the commission has appealed.

1. The Supreme Court of the United States has made it clear that a State has the power to tax a resident's income derived from sources outside the State, and that there is nothing in the Federal Constitution to prevent the exercise of such a power. *Maguire* v. *Trefry,* 253 U. S. 12. *Lawrence* v. *State Tax Commn. of Miss.* 286 U. S. 276. *New York* v. *Graves,* 300 U. S. 308. In the case last cited it was held that New York could constitutionally tax a resident upon income received from rents of land located without the State and from interest on bonds physically without the State and secured by mortgages upon lands similarly situ-

ated. The rationale for allowing a State to tax income earned elsewhere is based on the fact that inhabitants are supplied many services by their State of residence, and should contribute toward the support of the State, no matter where their income is earned.

The taxpayer does not argue that the Commonwealth lacks the power to tax income derived from a business carried on outside the State. Rather he argues that our "income tax" (as embodied in G. L. c. 62, entitled "Taxation of Incomes") as an historical fact is in reality a *property* tax and not an *income* tax, and that, therefore (see *Senior* v. *Braden*, 295 U. S. 422), G. L. c. 62, §§ 5 (b) and 6, are being unconstitutionally applied when income derived from property located in Maine is sought to be taxed. In amplification of this contention he argues, "Taxpayer's property, from which the income used as the measure of the tax was derived, was at all times in Maine. It was not located nor did it have a taxable situs in Massachusetts. Since it was located outside the borders of this Commonwealth, Massachusetts never had jurisdiction over the standing timber. The real property sold was also located in Maine. Taxes were paid to Maine jurisdictions both on the timber and on the land. Clearly the land and the timber sold were free from Massachusetts control and derived no benefit from nor received protection of Massachusetts laws. While the taxpayer was a resident of Massachusetts and did benefit from its law and protection, the tax is not a personal tax levied against him, but a property tax levied against his property."

A large body of law states that our "income tax" is in reality a tax on the underlying property. *Opinion of the Justices,* 220 Mass. 613, 624. *Hart* v. *Tax Commr.* 240 Mass. 37, 39. *Kennedy* v. *Commissioner of Corps. & Taxn.* 256 Mass. 426, 428. *Harrison* v. *Commissioner of Corps. & Taxn.* 272 Mass. 422, 427. *DeBlois* v. *Commissioner of Corps. & Taxn.* 276 Mass. 437, 439. *DeCordova* v. *Commissioner of Corps. & Taxn.* 314 Mass. 371, 373. *Riesman* v. *Commissioner of Corps. & Taxn.* 326 Mass. 574, 576–577.

See *Opinion of the Justices,* 266 Mass. 583, 585.   The nature of our income tax was first discussed in *Opinion of the Justices,* 220 Mass. 613, where it was said, "A tax upon the income of property is in reality a tax upon the property itself.   Income derived from property is also property. Property by income produces its kind, that is, it produces property and not something different.   It does not matter what name is employed.   The character of the tax cannot be changed by calling it an excise and not a property tax. In its essence a tax upon income derived from property is a tax upon the property" (p. 624).   This language has been quoted with approval in our decisions, some of which are cited above.   In *DeBlois* v. *Commissioner of Corps. & Taxn., supra,* the court speaking through Rugg, C.J., said, "The income here taxed came from the rents of real estate. The tax imposed by G. L. c. 62 is a property tax and not an excise tax. . . .   A tax upon income derived from real estate is a tax upon real estate" (p. 439).

The Appellate Tax Board attempts to justify the tax here as one upon "income . . . derived from business activities principally carried on in Maine."   The substance of this tax, however, is upon payments for the privilege of severing from the land a substantial part of its value.   This is the predominant aspect of the payments.   They are analogous to rent payments.   If a tax upon rents is a property tax on the real estate from which the rents are derived, the tax under consideration seems at least equally a tax upon the land.   General Laws c. 62, §§ 5 (b), 6, show no clear legislative intention to impose a tax upon such income derived either within or outside Massachusetts.   In view of the doctrine of strict construction of tax statutes and the construction which this court has placed on §§ 5 (b) and 6 of c. 62, we are of opinion that these provisions, in order to avoid constitutional doubts, should be construed as not taxing the proceeds of the sale of timber located in Maine. See *Senior* v. *Braden,* 295 U. S. 422; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194.   "A statute must be construed, if fairly possible, so as to avoid not only the

conclusion that it is unconstitutional but also grave doubts upon that score." *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 401. *Worcester County Natl. Bank* v. *Commissioner of Banks,* 340 Mass. 695, 701.

2.  We need not decide whether what has been said in part 1 of this opinion would also apply to the taxation under c. 62 of the gains from the isolated sale of real estate. Conceivably different considerations may apply. See *Willcuts* v. *Bunn,* 282 U. S. 216; *Tax Commr.* v. *Putnam,* 227 Mass. 522. We agree with the board that it was not the intention of the Legislature to tax as "business income" (under St. 1954, c. 611, § 1) gains from isolated sale transactions. See 1954 House Doc. No. 89, Recommendation 18. We, of course, do not decide what the result would be under the present statutory language. See St. 1957, c. 677, § 5.

3.  The decision of the board, in so far as it upholds the refusal of the tax commission to abate the tax with respect to the standing timber, is reversed; the abatements concerning this property sought by the taxpayer, there being no dispute as to the amount, are granted. The decision of the board granting the abatement with respect to the tax on the sale of the real estate is to stand. The taxpayer is to have costs of this appeal.

*So ordered.*