STATE TAX COMMISSION *vs.* VERNA R. FINE.

Suffolk. April 9, 1969. — May 12, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Taxation*, Income tax.

The amendment of G. L. c. 62, § 1 (e) by St. 1963, c. 496, was not intended to apply to foreign trusts of foreign real estate, and a dividend paid in 1963 by a foreign trust of foreign land to a Massachusetts holder of its transferable shares from "royalties" received from a lessee for the privilege of taking iron ore and other minerals from the trust land was not taxable to the shareholder under § 1 (e) even though the trustees had not filed the agreement provided for in § 1 (e).

APPEAL from a decision by the Appellate Tax Board.

*Barry F. Corn*, Assistant Attorney General, for the State Tax Commission.

*George A. Goldstein*, for the taxpayer, submitted a brief.

CUTTER, J. Verna R. Fine (the taxpayer), an inhabitant of Natick, filed a Massachusetts income tax return for 1963. She paid a tax of $527.61 on so called "dividends" from Mesabi Trust received by her in 1963. The commission denied her application for abatement. Her appeal was pressed before the Appellate Tax Board (the board) on the ground that no tax was due on income from Mesabi Trust because such "income was derived from real estate located solely in . . . Minnesota."

The board rendered a decision for the taxpayer. The commission appealed. The facts are stated upon the basis of the board's findings and a stipulation.

In 1961, Mesabi Iron Company, pursuant to a plan of complete liquidation, distributed its property (above amounts retained to pay certain liabilities) to Mesabi Trust and the Land Trust of which Mesabi Trust is the sole beneficial owner.[1] Mesabi Trust owns or controls land in Minnesota which it leases to Reserve Mining Company, which in return pays to Mesabi Trust "royalties" for the privilege of taking from the land iron ore and other minerals. Mesabi Trust's income is solely from these "royalties." Mesabi Trust is under obligation to "and does distribute all income, after expenses, to the holders of 13,120,010 beneficial interest units." The State of Minnesota "taxes the 'royalty' income received by the individual unit holders of the [Mesabi] Trust. Mesabi Trust is not a corporation, but is a real estate trust similar to a Massachusetts real estate trust. Insofar as it is a question of fact, the . . . [taxpayer] as a unit holder of Mesabi Trust, held a transferable beneficial or equitable interest in the Minnesota real estate itself and the income in question received by her during 1963 emanated from that real estate."

The beneficial interest in Mesabi Trust is represented by transferable units for which certificates have been issued. These units were and are listed for trading on a national stock exchange.

General Laws c. 62, § 1,[2] imposes an income tax on speci-

---

[1] All of the certificates respresenting the beneficial interest in Mesabi Trust were distributed to the shareholders of Mesabi Iron Company in exchange for their shares of Mesabi Iron Company. An exhibit indicates that Mesabi Trust was organized in New York in 1961 and had in 1963 one corporate trustee (a trust company) and four individual trustees, no one of whom appears to have been an inhabitant of Massachusetts. Mesabi Trust is not shown to have done any business in Massachusetts, to have any office here, or to own any property here.

[2] The introductory part of § 1 (as amended by St. 1954, c. 679, § 1; see later amendments through St. 1967, c. 796, § 5) reads, "On the amount by which the income of the classes described in subsections (a), (b), (c) and (e) received by any inhabitant of the commonwealth during the preceding calendar year exceeds the exemption claimed under subsection (h) there shall be levied, assessed and collected a tax at the rate of six per cent." Subsections (a) and (b) have no direct application to the present case.

fied forms of income from intangible personal property. Among the classes of "dividends" declared to be subject to tax, when received by an inhabitant of Massachusetts, are certain distributions of income by trusts with transferable shares. The provisions of § 1 describing such distributions are found in subsection (c).[3] As will be observed, these provisions relieve (subject to the filing of the agreement mentioned below, see fn. 5) from taxation under § 1 the distributions of certain trusts with transferable shares, among others, (1) such trusts owning exclusively real estate and certain described intangible personal property, and (2) such trusts "engaged principally in the ownership, management or operation of real estate." See Nichols, Taxation in Massachusetts (3d ed.), 479–482; Barrett and Bailey, Taxation (and 1969 Supp.), § 296.

Trusts with transferable shares, the distributions of which are exempt from taxation, are themselves required by § 1 (d) to pay an income tax on the "income derived from their property, so far as such income would be taxable under this section [§ 1] if received by an inhabitant of" Massachusetts.[4] As a condition of exempting from income tax the distributions of such a trust when received by an inhabitant of

[3] Section 1 (c), as amended through St. 1957, c. 445, § 2, reads, "Dividends, other than stock dividends . . . on shares in partnerships, associations or trusts, the beneficial interest in which is represented by transferable shares, except dividends on shares of the following: First, Partnerships, associations or trusts, which file with the commissioner the agreement hereinafter provided for, and the property of which consists exclusively of one or more of the following specified kinds of property, to wit: real estate wherever situated and . . . receipts therefrom . . . bonds, notes, loans secured by mortgage of real estate, and certificates of indebtedness, the income of which is exempt from taxation under this section; property the income of which, if any, would be taxable under this section if owned by an inhabitant of the commonwealth . . . . [The omitted portions of clause First (see fn. 12, *infra*) and the whole of clause Second seem inapplicable.] Third, Partnerships, associations or trusts, the beneficial interest in which is represented by transferable shares, engaged principally in the ownership, management or operation of real estate, which file with the commissioner the agreement hereinafter provided for." See § 1, par. (e), fn. 5, *infra*, for a description of the agreement referred to in the preceding portion of § 1 (c).

[4] General Laws (Ter. Ed.) § 1 (d), read in 1963 "(d) Partnerships, associations or trusts, the dividends . . . of which are exempt from taxation under this section, shall pay to the commissioner annually a tax of six per cent of the income derived from their property, so far as such income would be taxable under this section if received by an inhabitant of the commonwealth" (see later amendments through St. 1967, c. 796, § 6).

Massachusetts, the trust is required to file with the Commissioner of Corporations and Taxation an agreement [5] to pay the tax imposed by § 1 (d), see fn. 4, and any tax imposed by c. 62, § 5, upon the trust's annuities, business income, and capital gains. See § 5 (d).

The Massachusetts income tax statute was first adopted by St. 1916, c. 269, pursuant to art. 44 of the Amendments to the Constitution of the Commonwealth. It is not a general income tax (cf. the proposed tax considered in *Opinion of the Justices*, 270 Mass. 593, 597; 1928 House Doc. No. 490, pp. 26–28; 1929 House Doc. No. 1075, p. 22) and has frequently been held to be a property tax and not an excise.[6] See *Riesman* v. *Commissioner of Corps. & Taxn.* 326 Mass. 574, 576–577 (which refers to some income taxes in other States as excises). So far as c. 62 taxes income from intangible personal property, it historically is a substitute for the former local property tax on the capital value of such intangibles imposed prior to 1916. See 1916 House, Doc. No. 1700, p. 46, et seq; 1916 House Doc. No. 2118, pp. 2–4; Nichols, Taxation in Massachusetts (3d ed.) 463–472.

---

[5] The agreement is described in G. L. c. 62, § 1 (e), as amended by St. 1935, c. 489, § 7, and as further amended by St. 1963, c. 496, by inserting the final sentence of (e) (see later amendments of § 1 through St. 1967, c. 796), as follows: — "Dividends on shares of any partnership, association or trust, of the classes designated in paragraphs first, second and third of subsection (c), shall be subject to taxation under this section unless the trustees . . . thereof file with the commissioner, in such form as he determines, its agreement to pay to the commonwealth annually the tax imposed by subsection (d) and any tax imposed by section five. . . . Any such dividend issued by partnerships, associations or trusts, the beneficial interest in which is represented by transferable shares, *regardless of their source and whether taxable or not*, shall be taxable under this section if the said partnership, association or trust fails to file an agreement with the commissioner as hereinbefore provided" (emphasis supplied). The italicized words were added by St. 1963, c. 496, see fn. 10, *infra*, and related text of this opinion.

[6] In few areas are the divergences between the income tax provisions of the Federal Internal Revenue Code and the Massachusetts income tax greater than with respect to trusts with transferable shares and their distributions paid by such trusts. See Barrett and DeValpine, Taxation of Business Trusts and Other Unincorporated Massachusetts Entities with Transferable Shares, 40 B. U. L. Rev. 329. See also 1962 Ann. Surv. Mass. Law, § 17.17. The 1916 Special Recess Commission on Taxation (see Res. 1915, c. 134) did not recommend in 1916 House Doc. No. 1700, App. X, pp. 107–108, the provisions concerning trusts with transferable shares in precisely the form in which they were enacted. The provisions concerning the agreement to be filed by such trusts were inserted in 1916 House Bill, No. 2073, p. 4, without explanation by the 1916 Legislature's Committee on Taxation of the reasons for the insertion. See 1916 House Doc. No. 2118, App. A, pp. 7–8.

Not only is the Massachusetts income tax a property tax but it has been held to be "in reality a tax on the underlying property," i.e. the property from which the income is derived. See *State Tax Commn.* v. *Wheatland,* 343 Mass. 650, 652–653. See also *Cochrane* v. *Commissioner of Corps. & Taxn.* 350 Mass. 237, 243, fn. 5. Cf. *United Shoe Mach. Corp.* v. *Gale Shoe Mfg. Co.* 314 Mass. 142, 154. Massachusetts, of course, cannot impose a property tax on real estate in Minnesota.

The provisions of c. 62, § 1, permitting certain trusts with transferable shares, whose property is largely real estate (see fns. 3, 5, *supra*), to relieve their shareholders of income taxation on the trust distributions by filing the agreement mentioned above, have been in effect for over fifty years. They have not been much discussed in decided cases. In *De Blois* v. *Commissioner of Corps. & Taxn.* 276 Mass. 437, 438 (holding that rents from real estate are not taxable [7] under G. L. c. 62) this court made only a passing reference to the fact that the trust there discussed had in fact filed the statutory agreement. See *Eastern Gas & Fuel Associates* v. *Commissioner of Int. Rev.* 128 F. 2d 369, 371 (1st Cir.). In *State Tax Commn.* v. *Colbert,* 344 Mass. 494, 495–497, the Massachusetts owner of transferable shares in a real estate trust, created to hold Massachusetts land, was held entitled to abatement of an income tax assessed (G. L. c. 62, § 1 [c]) upon a distribution to him of trust income received from the trust real estate. The trust had not filed with the Commissioner of Corporations and Taxation under G. L. c. 62, § 1 (e), an agreement to pay the tax under § 1 (d) on the trust's income which would be taxable if received by

---

[7] See *United Shoe Mach. Corp.* v. *Gale Shoe Mfg. Co.* 314 Mass. 142, 153–154; *Riesman* v. *Commissioner of Corps. & Taxn.* 326 Mass. 574, 576; *Commissioner of Corps. & Taxn.* v. *Gardiner,* 329 Mass. 654, 656–657; *State Tax Commn.* v. *Colbert,* 344 Mass. 494, 497. Cf. *Ayer* v. *Commissioner of Corps. & Taxn.* 269 Mass. 279, where dividends of a Michigan statutory association were treated as distributions by a quasi-corporation or "joint stock company" and taxable under a predecessor of G. L. (Ter. Ed.) c. 62, § 1 (b), since revised materially. No question of the § 1 (e) agreement to pay taxes under what is now § 1 (d) there arose because corporations and joint stock companies were not permitted by the statute to file such an agreement.

an individual inhabitant of Massachusetts. See fns. 4 and 5, *supra*. We said (p. 497), "The taxpayer held an equitable interest in the real property held by the trust. . . . It was a beneficial interest in the real estate itself and not, as in the case of a corporation, an interest distinct from the corporate assets. . . . Despite similarities between a business trust and a corporation, a trust is treated as a distinct type of business entity within G. L. c. 62, § 1. *State St. Trust Co.* v. *Hall,* 311 Mass. 299, 303–304. Income received by a shareholder of a real estate trust in the form of a dividend is as much 'derived . . . from real estate' as income received by the trust. Taxation of shareholders' income derived from real estate trusts we think ought not to depend on whether the trustees have filed the agreement provided for in § 1 (e)."[8]

The *Colbert* case was decided after our decision in *State Tax Commn.* v. *Wheatland,* 343 Mass. 650, where we held that under c. 62, § 5, a tax could not be imposed upon rents (timber severance royalties) as business income paid to an inhabitant of Massachusetts who was a coöwner [9] of Maine forest real estate. We said (p. 653) that c. 62 showed no clear intention to tax rental income from real estate "either within or outside Massachusetts." We applied in addition the principle that c. 62 ("in reality a [property] tax on the underlying property," see p. 652) should be construed so as to

---

[8] This court has recognized that trusts with transferable shares are not corporations and cannot be treated as such for some tax purposes, e.g. an excise upon the doing of business. See *Opinion of the Justices,* 266 Mass. 590, 594–595. There it was said that a proposed excise upon trusts with transferable shares cannot be justified as a tax upon a "commodity" or upon a franchise, because (p. 595), it "does not operate equally upon all persons exercising the employment or business taxed, in that the distinction between associations, partnerships and trusts with transferable certificates of participation or shares, and those without such transferable certificates or shares, renders the excise unequal and unreasonable, such discrimination between the two classes being founded upon an immaterial fact." At various times the revision of taxes upon trusts with transferable shares has been under legislative review. See Report of State Tax Commission pursuant to Res. 1961, c. 28, found in 1962 House Docs. Nos. 3482, 3622, and Res. 1962, c. 96. See also 1962 House Doc. No. 1453.

[9] The *Wheatland* case involved an attempt to tax the Maine timber rents as business income under G. L. c. 62, § 5 (b). It did not deal with a trust with transferable shares. See 1962 Ann. Surv. Mass. Law, § 17.17; note, 43 B. U. L. Rev. 153.

avoid grave doubts about the constitutional validity of a property tax upon real estate outside Massachusetts.

What has been said above outlines the state of the law immediately after the decision in the *Colbert* case, 344 Mass. 494. The State Tax Commission promptly recommended [10] a change in G. L. c. 62, § 1 (e), see fn. 5, *supra*, with respect to trusts with transferable shares which do not file the agreement. This recommendation in substance was enacted by St. 1963, c. 496, which added to G. L. c. 62, § 1 (e), what appears above (fn. 5) as its final sentence, viz. "Any such dividend issued by . . . trusts, the beneficial interest in which is represented by transferable shares, *regardless of their source and whether taxable or not*, shall be taxable under this section if the . . . trust fails to file an agreement with the commissioner as hereinbefore provided" (emphasis supplied).

The question for decision is whether this 1963 change, which would have been extremely obscure if its purpose had not been explained to some extent by the commission's recommendations (fn. 10), is sufficient to indicate a legislative intention to impose a property tax upon rental income from Minnesota real estate. Such a tax, in substance, would result in a double, if not a triple, tax burden on that real estate, viz. (a) a Minnesota property tax on the land in Minnesota to Mesabi Trust, (b) a tax upon the "royalties" or rental income there, see *Lake Superior Consol. Iron Mines* v. *Lord*, 271 U. S. 577, 581–582;[11] and also (c) a tax, under

---

[10] The recommendations are found in 1963 House Docs. Nos. 101 and 104. The former document (1963 House Doc. No. 101) at pp. 2–3, read, "CLARIFI-CATION OF LAW RELATING TO THE CREATION OF INCOME TAX LIABILITY FOR FAILURE TO FILE AGREEMENT WITH THE COMMISSIONER AS IT RELATES TO PARTNERSHIPS, ASSOCIATIONS AND CERTAIN TRUSTS. A recent opinion of the Supreme Judicial Court rendered in the case of *State Tax Commission* vs. *Thomas F. Colbert* . . . on the subject of the taxability of certain dividends paid out by a trust, the beneficial interest in which is represented by transferable shares without first having entered into an agreement with the Commissioner, as provided for in subsection (e) of section 1 of chapter 62 of the General Laws, has caused the . . . Commission to file this proposal for legislation, calling upon the General Court to clarify its intent . . . . [T]he . . . proposal and its accompanying bill [1963 House Doc. No. 104] sets out in adequate language that which the Department of Corporations and Taxation has always felt was the original basis for the initial passage of the law."

[11] See Minnesota Stats. Anno. §§ 272.01, 272.04 concerning property taxes, and chapters 298 and 299, concerning mining occupation and royalty taxes. See C.C.H. Minnesota Tax Serv. pars. 20–162, 45–000 et seq.

G. L. c. 62, § 1 (c) and (e), on distributions of trust rental income from Minnesota land to the taxpayer in Massachusetts which our cases treat as a tax upon the equitable interest of the Massachusetts shareholder in the Minnesota land.

We assume, although the record does not clearly show this to be so, that Mesabi Trust has not filed the agreement mentioned in c. 62, § 1 (e). From the record it is not clear whether Mesabi Trust had in 1963 any income which would preclude it, as a practical matter, from filing the agreement under § 1 (e), fn. 5, *supra*. If it did file the agreement, it, of course, undertook to pay to Massachusetts an income tax under § 1 (d), fn. 4, *supra*, upon *all* its income [12] which would be taxable under c. 62, if received by an individual inhabitant of Massachusetts. Such a payment necessarily would have been detrimental to the probably numerous holders of Mesabi Trust units who did not live in Massachusetts. This circumstance may explain why the agreement was not filed, if it was not filed. We think that the mining royalties received by Mesabi Trust are rental income just as the timber rentals or royalties in the *Wheatland* case, 343 Mass. 650, constituted rental income.[13]

The amendment of § 1 (e) made by St. 1963, c. 496, unquestionably (fn. 10) was intended to clarify the law which resulted in the *Colbert* case, 344 Mass. 494. That case, however, dealt with a Massachusetts trust with transferable shares which had distributed to certificate holders in Massachusetts gains from the sale of Massachusetts land. With re-

---

[12] Although § 6.2 of the Mesabi Trust agreement limits the trustees to investing in deposits in interest-bearing bank accounts and obligations of the United States, at least interest on some of the trust's bank accounts or certificates of deposit (e.g. those in New York savings banks or commercial banks) might be taxable under G. L. c. 62, § 1 (d), if received by an inhabitant of Massachusetts.

[13] It may be significant that if the Minnesota royalties had been distributed to a Massachusetts inhabitant by a New York trust *without* transferable shares, the royalties would not have been taxable under c. 62, § 1 and § 11 (as amended through St. 1955, c. 592, § 3), because the income would have been nontaxable rents. The question thus is presented whether there is any such difference because of the transferability of the Mesabi Trust shares as will justify the difference in treatment. See *Commissioner of Corps. & Taxn.* v. *Flaherty*, 306 Mass. 461, 465–466.

spect to Massachusetts trusts with transferable shares formed to hold Massachusetts land, or doing business here, this Commonwealth has substantial regulatory power (see e.g. G. L. c. 182; *Swartz* v. *Sher*, 344 Mass. 636, 639–642) and power to subject to some form of tax at least resident trustees and beneficiaries. This power to tax is subject to none of the uncertainties which may arise with respect to taxation of the shareholders of a trust holding only land outside of Massachusetts and having no Massachusetts trustees.

In the legislative history of the 1963 amendment there is no indication (a) of any express purpose to impose a property tax upon rents or other income from real estate outside Massachusetts, or (b) to modify the tax under c. 62, § 1 (characterized by a long line of Massachusetts cases as a property tax), to some form of excise (see *Harrison* v. *Commissioner of Corps. & Taxn.* 272 Mass. 422, 427) measured by income or to a general income tax, or (c) to impose upon a foreign trust, as a condition of relieving from tax its distributions (to Massachusetts recipients) of trust income from real estate, any requirement likely to be unfair to its shareholders not resident in Massachusetts. The primary purpose of the 1963 amendment seems to have been to deal only with the precise situation which in fact arose in the *Colbert* case.

We assume, without deciding, that, within art. 44 of the Amendments to the Constitution of the Commonwealth, a statute might be devised (a) which clearly was not intended to have the effect of a property tax upon the land outside Massachusetts from which was derived the income sought to be taxed and (b) which would bring the Massachusetts income tax imposed by § 1 (c), (d), and (e) within the scope of the decisions in the Supreme Court of the United States, referred to in *Riesman* v. *Commissioner of Corps. & Taxn.* 326 Mass. 574, 576, as dealing with income taxes "of the excise type." If the 1963 amendment of § 1 (e) had done this clearly and in a nondiscriminatory manner, a substantially different question would have arisen. We think, however, that the 1963 amendment did not purport in any manner to change the tax imposed by § 1 (c) from one in

effect a property tax upon the Minnesota land. Accordingly, we do not attribute to the Legislature any intention to apply the amendment to foreign trusts of foreign land, in the situation of Mesabi Trust, in the manner for which the commission contends.

It may be that the practical effect of requiring a foreign trust with transferable shares to file the agreement could be accomplished without imposing upon it a condition which the foreign trust could not accept in fairness to its shareholders outside Massachusetts, e.g. by taxing under § 1 (c) only that proportion of each trust distribution to a Massachusetts shareholder which (a) the trust's income, taxable if received by an individual Massachusetts resident, bears to (b) the total trust income. The 1963 amendment, however, contains no such provision. We cannot supply one. See *Harrison* v. *Commissioner of Corps. & Taxn.* 272 Mass. 422, 431.

*Decision of the Appellate Tax Board affirmed with costs.*