TIMOTHY A. INGRAHAM *vs.* STATE TAX COMMISSION.

Suffolk. January 8, 1975. — June 26, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Taxation*, Income tax. *Statute,* Construction. *Constitutional Law,* Taxation. *Words,* "Income."

G. L. c. 62, §§ 1-8, as appearing in St. 1971, c. 555, § 5, authorized the taxation of income derived by a resident of Massachusetts from rental property outside Massachusetts and the sale of gravel and standing timber located on real property outside Massachusetts. [243-245]

Taxes imposed by G. L. c. 62, §§ 1-8, as appearing in St. 1971, c. 555, § 5, on income derived by a resident of Massachusetts from rental property outside Massachusetts and the sale of gravel and standing timber located on real property outside Massachusetts were authorized under art. 44 of the Amendments to the Massachusetts Constitution and did not violate the proscription of the Federal Constitution on the imposition of property taxes beyond a State's borders. [245-249]

APPEAL from a decision of the Appellate Tax Board.

*Frederick D. Herberich (Gail M. Harmon* with him) for the taxpayer.

*Robert H. Quinn,* Attorney General, *Walter H. Mayo, III,* Assistant Attorney General, *& Joseph A. Grasso, Jr.,* Deputy Assistant Attorney General, for the State Tax Commission, submitted a brief.

REARDON, J.   This is an appeal from a decision of the Appellate Tax Board (board) affirming the refusal of the State Tax Commission (commission) to abate income taxes assessed against the taxpayer in 1971.   The facts were stipulated by the parties and can be summarized briefly.

In 1971 the taxpayer, a Massachusetts resident, received $4,530.22 from the sale of standing timber located on land in Maine plus $81.10 as rental income and as receipts from the sale of gravel also on land in Maine.   He included these items in his 1971 tax return, and paid the tax due, but subsequently filed for an abatement of that portion of the tax paid attributable to the income from the Maine real estate (amounting to $222.64).   The commission refused the abatement and the board affirmed on the ground that this income was subject to taxation under G. L. c. 62, §§ 1-8, as appearing in St. 1971, c. 555, § 5.[1]

The questions presented by this appeal are first, whether the statute authorizes taxation of Massachusetts residents on income derived from realty located outside the Commonwealth, and, second, whether the Constitution of the Commonwealth empowers the Legislature to impose such a tax.

1. We begin with the undisputed proposition that prior to the 1971 amendment of c. 62 the income derived from real property outside the Commonwealth was not subject

---

[1] General Laws c. 62, §§ 1-8, have been further amended by St. 1973, c. 723, § 2.   The 1973 changes do not apply to the taxable year 1971 and, in any event, have no bearing on the issues before us in this case.

to taxation under c. 62. *State Tax Commn.* v. *Wheatland,* 343 Mass. 650 (1962). In the *Wheatland* case the court found "no clear legislative intention to impose a tax upon such income derived either within or outside Massachusetts." Consequently, and "to avoid constitutional doubts," the statute was construed as not taxing the proceeds of the sale of timber located in Maine. *Id.* at 653. A subsequent case, *State Tax Commn.* v. *Fine,* 356 Mass. 51, 59 (1969), likewise construed c. 62 as not taxing rents or other income from real estate outside Massachusetts, finding no indication of any "express purpose" to impose such a tax. The taxpayer here argues that no statement of express purpose can be found in the 1971 amendment to compel the conclusion that rental income from foreign realty is now taxable under c. 62.

The changes in the tax law brought about by St. 1971, c. 555, seem to us far too extensive to permit analysis along the lines of the *Wheatland* and *Fine* cases. Prior to 1971 the only income to be taxed was that which could be characterized as within certain specified classes of income defined by the source of the income. See 1970 Senate Doc. No. 126, p. 46; 1971 Senate Doc. No. 1281, p. 93; Nichols, Taxation in Massachusetts (3d ed. 1938) 467; Barrett and Bailey, Taxation (2d ed. 1970) §§ 3, 4. This approach was completely altered by St. 1971, c. 555, § 5. "Gross income" for State purposes is now based on "federal gross income" under the Internal Revenue Code, subject to certain modifications. G. L. c. 62, § 2 (a). Rather than being limited to specified classes of income, "gross income" thus embraces "all income from whatever source derived." 26 U. S. C. § 61 (a) (1970). As was observed by this court in *Barnes* v. *State Tax Commn.* 363 Mass. 589, 592-593 (1973), "there is no gainsaying . . . that the '1971 act completely rewrote the Income Tax Law, and in many respects completely revised the basic nature of the tax.'" It is undeniable that rental income derived from property irrespective of its location is contained within the Federal definition of gross

income.   26 U. S. C. § 61 (a) (5) (1970).   Also, it is evident from the legislative history of St. 1971, c. 555, that the Legislature was fully aware of the fact that rental income would be taxed under the proposed revision of c. 62, for such taxation had been specifically recommended by the Special Commission to Develop a Master Tax Plan and by the Governor in submitting the bills which were before the Legislature at the time.   See 1971 Senate Doc. Nos. 1298, 1299 and 1300; 1971 House Doc. No. 5858, p. 1.   There is no foundation in the legislative history or the language of the statute for distinguishing income from foreign realty from other rental income. See McGee, Massachusetts Taxation of Income from Foreign Real Estate, 18 Boston Bar J. No. 4, 7-8 (1974). The definition of gross income in the new c. 62 is unambiguous and all inclusive, and is quite unlike that in the statute involved in *State Tax Commn.* v. *Fine,* 356 Mass. 51, 57 (1969), the language of which was described by this court as "extremely obscure."   In our view, unless the State lacks the constitutional authority to tax rental income from foreign realty, St. 1971, c. 555, § 5, must be construed to accomplish that very result.

2. The position of the taxpayer is that the income tax authorized by our Constitution is a property tax rather than a general income tax or an excise.   Particular reliance is placed on the cases holding that "a tax upon income derived from property is a tax upon the property." *Opinion of the Justices,* 220 Mass. 613, 624 (1915). *DeBlois* v. *Commissioner of Corps. & Taxn.* 276 Mass. 437, 439 (1931).   *State Tax Commn.* v. *Wheatland,* 343 Mass. 650, 652-653 (1962), and cases cited.   Since a State cannot impose a property tax on real estate outside its borders, see *Senior* v. *Braden,* 295 U. S. 422 (1935), it is argued that Massachusetts lacks the power to levy this "property tax" based on income from property in Maine.

The Commonwealth's authority to impose an income tax derives from art. 44 of the Amendments to the Constitution of the Commonwealth.   The full text of art. 44

is set out in the margin.[2]   The principal aim of adopting
art. 44 in 1915 was to provide a more satisfactory system
for the taxation of intangible personal property by
permitting a tax on the income from various types of
property as a substitute for local taxes on the capital
value of such property. *State Tax Commn.* v. *Fine,*
*supra,* at 54.   1916 House Doc. No. 1700 p. 46.
Nichols, Taxation in Massachusetts (3d ed. 1938) 463-468.
Barrett and Bailey, Taxation (2d ed. 1970) §§ 1-5.   As
described above, the income tax law up until 1971 was
limited in application to specified classes of income,
reflecting this historical purpose.   However, by its terms,
art. 44 contains no such limitations but rather grants
complete authority to tax the full range of incomes.   Less
than two years after the adoption of art. 44, this court
described the amendment in expansive language:   "The
adoption and ratification of the Forty-fourth Amendment
under . . . [the] circumstances renders imperative the
inference that the word 'income' was there used with the
purpose of setting at rest any doubt about the full and
complete power of the Legislature to deal with 'income'
as a subject of taxation.   That word was employed to
express a comprehensive idea.   It is not to be given a
narrow or constricted meaning.   It must be interpreted
as including every item which by any reasonable under-

---

[2] "Full power and authority are hereby given and granted to the
general court to impose and levy a tax on income in the manner
hereinafter provided.   Such tax may be at different rates upon
income derived from different classes of property, but shall be levied
at a uniform rate throughout the commonwealth upon incomes
derived from the same class of property.   The general court may tax
income not derived from property at a lower rate than income
derived from property, and may grant reasonable exemptions and
abatements.   Any class of property the income from which is taxed
under the provisions of this article may be exempted from the
imposition and levying of proportional and reasonable assessments,
rates and taxes as at present authorized by the constitution.   This
article shall not be construed to limit the power of the general court
to impose and levy reasonable duties and excises."

standing can fairly be regarded as income." *Tax Commn.* v. *Putnam,* 227 Mass. 522, 525-526 (1917). See 1951 House Doc. No. 2279, p. 13; Nichols, Taxation in Massachusetts (3d ed. 1938) 468. It seems to us that in enacting St. 1971, c. 555, the Legislature has for the first time attempted to utilize the full measure of its power to tax incomes by adopting a general income tax, typically described as one taxing income irrespective of its source, in conformity with the Federal model.[3] See *Commissioner of Corps. & Taxn.* v. *Rathbone,* 321 Mass. 312, 315 (1947); 1928 House Doc. No. 490, p. 27; 1929 House Doc. No. 1075, p. 8; 1938 House Doc. No. 1703, p. 98; 1951 House Doc. No. 2279, p. 13; 1970 Senate Doc. No. 126, p. 46. Cf. *State Tax Commn.* v. *Fine,* 356 Mass. 51, 54 (1969). That rents and receipts from the sale of timber and gravel on land in Maine may "fairly be regarded as income" in the constitutional sense can hardly be doubted.

Despite this general power to tax income, the question remains whether art. 44 must be construed as not encompassing the taxation of income derived from real estate outside the Commonwealth because of our past holdings that the income tax is in reality a property tax and because the Federal Constitution proscribes imposition of a property tax beyond a State's borders. Our conclusion

---

[3] That the taxable income is divided into two classes according to the source of the income under G. L. c. 62, § 4 (as appearing in St. 1971, c. 555, § 5), and taxed at two different rates does not mean that c. 62 ought not to be characterized as a general income tax. The two classes of income represent generally the distinction between earned and unearned income. This distinction may be said to rest on the possibility that investment income provides a somewhat greater ability to pay than does earned income. Such difference in treatment for earned and unearned income pervades the Federal tax law, which has always been considered a general income tax. See, e.g., 26 U. S. C. §§ 37 (a), (g), 56-58, 141 (e) (1), 911 (b), and 1348 (1970). Nor are the various departures from the Federal law contained in c. 62 mentioned here by the taxpayer so significant as to require the conclusion that c. 62 cannot be characterized as a general income tax. Cf. *Barnes* v. *State Tax Commn.* 363 Mass. 589, 591-593 (1973).

is that the art. 44 power need not be so limited. Numerous cases have made clear that a State is not prevented by the Federal Constitution from taxing a resident's income derived from property outside the State. *Maguire* v. *Trefry,* 253 U. S. 12 (1920), affg. *Maguire* v. *Tax Commr.* 230 Mass. 503 (1918). *Lawrence* v. *State Tax Commn. of Miss.* 286 U. S. 276 (1932). *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308 (1937). *Greenough* v. *Tax Assessors of Newport,* 331 U. S. 486, 491 (1947). *State Tax Commn.* v. *Wheatland,* 343 Mass. 650, 651 (1962). See Nichols, Taxation in Massachusetts (3d ed. 1938) 107. As stated in the *Wheatland* case, *supra,* at 652, the "rationale for allowing a State to tax income earned elsewhere is based on the fact that inhabitants are supplied many services by their State of residence, and should contribute toward the support of the State, no matter where their income is earned." See *Maguire* v. *Tax Commr.* 230 Mass. 503, 512-513 (1918), affd. sub nom. *Maguire* v. *Trefry,* 253 U. S. 12 (1920). We can find no material difference between the income tax imposed by G. L. c. 62, §§ 1-8, and the income tax involved in *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308 (1937), where the Supreme Court upheld the taxation of rental income from out-of-State realty. It may fairly be said that the 1971 amendment, in adopting the approach of a general income tax, has brought the statute within the scope of the Supreme Court decisions cited above. See *State Tax Commn.* v. *Fine,* 356 Mass. 51, 59 (1969). We need not address ourselves to the precise question whether the tax imposed by c. 62 remains, as a matter of State law, essentially a property tax as well as an income tax.[4] Our concern here is whether as a matter of *Federal law* it must be deemed a property tax, for the Supreme Court has stated that where the validity of the tax under the Federal Constitution is challenged,

---

[4] Nor do we need consider the approach taken by the Appellate Tax Board, which characterized the tax as an excise, or "of the excise

the nature of the tax is a Federal question. *Macallen Co.* v. *Massachusetts,* 279 U. S. 620, 625-626 (1929). *Senior* v. *Braden,* 295 U. S. 422, 429 (1935). As mentioned, there is no doubt that under the reasoning of *New York ex rel. Cohn* v. *Graves, supra,* the nature and effect of this tax would be viewed as that of a tax on the income from property as distinguished from a tax on the property itself. Under the Supreme Court's analysis, the two types of taxes are "distinct and separable" in that they are "measured by different standards, the one by the amount of income received over a period of time, the other by the value of the property at a particular date." *Id.* at 314. It is plain, then, that Federal law imposes no obstacle to construing the broad art. 44 power, which encompasses "every item which . . . can fairly be regarded as income" (*Tax Commr.* v. *Putnam,* 227 Mass. 522, 525-526 [1917]), to include income derived from real property in another State. We thus conclude that the tax imposed here by c. 62 is within the scope of the taxing power authorized by art. 44 of the Constitution of the Commonwealth.

Accordingly, the decision of the Appellate Tax Board is affirmed.

*So ordered.*

type." The latter phrase was employed by this court in *Riesman* v. *Commissioner of Corps. & Taxn.* 326 Mass. 574, 576 (1950), to describe the tax involved in *New York ex rel. Cohn* v. *Graves, supra,* but the Supreme Court in the *Graves* case did not use the term in its opinion and concerned itself with the nature and effect of the tax rather than its nominal classification.