RICHARD L. DAVISSON & another[1], executors, *vs.*
COMMISSIONER OF REVENUE.

Norfolk.   September 11, 1984. — November 7, 1984.

Present: GREANEY, C.J., GRANT, & FINE, JJ.

*Taxation,* Estate tax. *Real or Personal Property. Oil and Gas. Statute,* Construction. *Real Property,* Profit à prendre, Removal of material.

A decedent's interests in certain out-of-State oil and gas properties constituted "real . . . property having an actual situs outside the Commonwealth" and thus, under G. L. c. 65C, § 1(*f*), were not part of his taxable estate for purposes of the Massachusetts estate tax. [751-754]

PETITION filed in the Norfolk Division of the Probate and Family Court Department on January 24, 1980.

An appeal from the denial of an application for abatement of estate tax was filed December 6, 1982, and was heard by *Ginsburg,* J.

*Christine Way (Robert J. McGee* with her) for the plaintiffs.

*Francis X. Bellotti,* Attorney General, *& Linda M. Irvin,* Assistant Attorney General, for the Commissioner of Revenue, submitted a brief.

FINE, J. The only question in this case is whether a decedent's interests in certain oil and gas properties located in Texas and New Mexico are taxable as part of his estate under the Massachusetts estate tax. G. L. c. 65C, §§ 1 et seq. A probate judge ruled that they were not, and the Commissioner of Revenue has appealed.[2] The answer to the question turns on whether

---

[1] Charles A. Rheault.

[2] The executors filed a Massachusetts estate tax return listing the interests in question as non-Massachusetts property. After auditing the return, the Commissioner included the assets as part of the decedent's Massachusetts gross estate. The executors applied for an abatement of the tax, claiming that the Commissioner had erroneously included the interests as part of the

the particular property interests held by the decedent on the date of his death represented "real and tangible personal property having an actual situs outside the Commonwealth," G. L. c. 65C, § 1(f), inserted by St. 1975, c. 684, § 74. Our research indicates that the application of the Massachusetts estate tax to this particular type of asset has not previously been dealt with in an appellate decision.

When the decedent died on January 13, 1980, a domiciliary of Massachusetts, he owned three separate interests in oil and gas "leases." "Lease" is a term used loosely in the oil and gas industry to designate a variety of relationships between investors and landowners. (1) He had a "royalty interest" in an oil and gas lease relating to land in New Mexico. Under the terms of this lease he was designated as one of two "lessors" who were entitled to receive one-eighth of the oil produced or, at the lessee's option, one-eighth of the proceeds of the sale of the oil produced, and one-eighth of the proceeds of the sale of gas produced. (2) He had a "working interest" in an oil and gas lease relating to land in Texas, which interest he obtained by assignment from the lessee. Under the terms of this lease, the lessee, in exchange for payment of rents and royalties to the lessor, was entitled to explore, develop, and operate the land for the purpose, essentially, of producing oil, gas, and other minerals. (3) And he had an "overriding royalty interest" in an oil and gas lease, also relating to land in Texas, which interest he obtained by assignment from an overriding royalty interest holder under the original oil and gas lease. The decedent's "working interest" and "overriding royalty interest" are each set forth in a "division order" specifying the nature of the interest and the fractional share.

The three underlying leases are form documents, similar in content. They all "grant, lease and let exclusively," and the New Mexico lease also "demises," the land described for the

Massachusetts gross estate. The Commissioner denied the application, whereupon this action was commenced in a Probate Court. The parties submitted a stipulation of facts. The judge ruled that each of the decedent's interests constituted realty with a situs outside of the Commonwealth, and, consequently, that they were not subject to the Massachusetts estate tax.

purpose of exploration and production of oil and gas. Each is for a five-year term and "thereafter" so long as minerals are produced. Royalties accrue to the lessor as a fractional share of production, the lessee having the option to purchase that share at market price. Lessors and lessees have full rights of assignment. A lessee may surrender or abandon the lease, whereupon the interest in all minerals reverts to the lessor. Except to the extent of the rights of a lessor to royalties, the lessee owns the minerals produced. The lessee has the right to make reasonable use of the surface to the extent necessary to obtain the oil and gas.

The difference between an "overriding royalty interest" and a "working interest" is that payments to one holding an "overriding royalty interest" are determined without deducting production costs, whereas one who has a "working interest" assumes an obligation to pay production costs. None of the parties makes an issue of the differences among the three types of ownership involved. Although the documentation in the record of the chain of title with regard to the decedent's overriding royalty interest is incomplete, there is no basis for speculation that successive assignments gave assignees something less than the original lessee's interest in the particular fractional share transferred.[3] There is nothing in the record to indicate that either of the States in which the minerals are located is seeking to impose an estate tax on these interests.

For purposes of the Massachusetts estate tax (which replaced the inheritance tax for persons dying on or after January 1, 1976) "gross estate" is defined as

> "the federal gross estate, whether or not a federal estate tax return is required to be filed, less the value of real and tangible personal property having an actual situs outside the Commonwealth." G. L. c. 65C, § 1(*f*), inserted by St. 1975, c. 684, § 74.[4]

---

[3] We express no opinion as to whether a holder of an overriding royalty interest with no rights other than the right to receive proceeds from the minerals sold would be viewed as holding intangible personal property.

[4] The terms used are not defined in the statute. General Laws c. 4, § 7, provides that, for purposes of statutory construction in general, the words

The Federal gross estate, in turn, is defined in 26 U.S.C. § 2031(a) (1976) as the "value . . . of all property, real or personal, tangible or intangible, wherever situated." Thus, real property or tangible personal property located outside of Massachusetts is excluded from a person's Massachusetts gross estate, whereas intangible personal property, regardless of its location, is included.

The property in question has, in varying degrees, aspects of personalty and realty as well as tangibility and intangibility. On the one hand, like securities, the interests entitle the owner to receive monetary payments. On the other hand, they clearly relate to physical substances in the ground which are tangible and usually regarded as parts of the land.

The question to be determined is whether the Massachusetts Legislature intended to include within the categories of real property or tangible personal property any or all of the mineral interests owned by the decedent at the time of his death or whether, on the other hand, such interests were intended to be classified as intangible personal property. To make the determination called for, we must first look to Massachusetts opinions preceding the insertion of G. L. c. 65C because, presumably, the Legislature was aware of earlier appellate decisions when it made the distinctions in issue in this case. See *Page* v. *Commissioner of Revenue,* 389 Mass. 388, 392 (1983). Thus, it is of significance that Massachusetts has consistently recognized that mineral rights may be severed from the remainder of land by reservation or grant, leaving an estate in the minerals which is separate and distinct from the soil in which they lie. See *Adams* v. *Briggs Iron Co.,* 7 Cush. 361, 366, 367

---

" 'land,' 'lands' and 'real estate' shall include lands, tenements and hereditaments and all rights thereto and interests therein." General Laws c. 140C, § 1(*w*), as in effect prior to St. 1981, c. 733, § 1, defines "real property" for purposes of the Consumer Credit Cost Disclosure Act as "property which is real property under the law of the State in which it is located." General Laws c. 64H, § 1(15), defines "tangible personal property" for purposes of the Massachusetts sales tax as "personal property of any nature consisting of any produce, goods, wares, merchandise and commodities whatsoever . . . but shall not include rights and credits, insurance policies, bills of exchange, stocks and bonds and similar evidences of indebtedness or ownership."

(1851); *Chester Emery Co*. v. *Lucas,* 112 Mass. 424 (1873); *Hunt* v. *Boston,* 183 Mass. 303, 305 (1903). A right to take minerals from land — something less than a fee interest in the minerals — has generally been included within the category of profits à prendre which are viewed as real estate.[5] See *State Tax Commn*. v. *Wheatland,* 343 Mass. 650 (1962), holding that for purposes of the Massachusetts income tax then in effect[6] payments to an owner for out-of-State timber rights were derived from profits à prendre, analogous to the right to receive rent payments, and not taxable because they represented interests in real estate. Accord *State Tax Commn*. v. *Fine,* 356 Mass. 51 (1969), dealing specifically with the right to receive royalties based on mineral deposits located in Minnesota. See also *Gray* v. *Handy,* 349 Mass. 438 (1965).

Although not conclusive as to the intent of the Massachusetts Legislature, it is of some significance that the courts in Texas and New Mexico, where the minerals are located, as well as most courts elsewhere in the country and most commentators, would also classify the kind of mineral rights with which we are concerned as something other than intangible personal property.[7]

---

[5] For a case on point decided after the adoption of the Massachusetts estate tax, see *Bates Sand & Gravel Co*. v. *Commonwealth,* 380 Mass. 933 (1980), holding that the right to remove sand and gravel from land was a present interest in that land which fell squarely within the definition of a profit à prendre and which was a compensable interest in the condemned real estate.

[6] The Massachusetts income tax was first adopted in 1916 (St. 1916, c. 269), pursuant to art. 44 of the Amendments to the Constitution of the Commonwealth. As originally enacted and until the law was amended in 1971 (St. 1971, c. 555) to make the definition of taxable income conform more closely to the definition of "federal gross income" under the Internal Revenue Code, 26 U.S.C. § 61(a) (1970), the Massachusetts income tax was frequently held to be not a general income tax or an excise tax but a tax on the underlying property. See *State Tax Commn*. v. *Fine,* 356 Mass. 51, 54-55 (1969); *Ingraham* v. *State Tax Commn.,* 368 Mass. 242, 243-245 (1975). Prior to 1971, income derived from real property, whether located within or without Massachusetts, was not taxable. See *State Tax Commn*. v. *Wheatland,* 343 Mass. 650, 653 (1962).

[7] In Texas, the lease vests in the lessee a determinable fee in the oil and gas in place, *Waggoner's Estate* v. *Sigler,* 118 Tex. 509 (1929), and the

Classifying the decedent's royalty interest as an interest in real estate presents little difficulty. The royalty interest represents outright ownership of a fractional portion of the minerals in the ground. Although they also represent interests in the mineral deposits in the ground, the overriding royalty and working interests are different from the royalty interest in that they are carved out of the lessee's interest in the minerals. Notwithstanding the terminology used, the lessees' interests are indistinguishable from profits à prendre and should be treated

royalty interest is an interest in land because it represents a portion of the oil and gas which remains vested in the lessor. *Sheffield* v. *Hogg,* 124 Tex. 290 (1934). As such, it is subject to tax as real property. *Id.* at 299. New Mexico also recognizes oil and gas leases and retained royalty interests as real property. *Padilla* v. *Roller,* 94 N.M. 234, 235 (1980), reaffirming *Terry* v. *Humphreys,* 27 N.M. 564 (1922), and *Duvall* v. *Stone,* 54 N.M. 27 (1949). In other jurisdictions which recognize the fee to the minerals in place prior to possession as severable from the fee to the surface land, the retained royalty interest of the lessor and the various lessee interests are generally considered real property. *Arrington* v. *United Royalty Co.,* 188 Ark. 270 (1933). *Hagood* v. *Heckers,* 182 Colo. 337, 347-348 (1973). *State ex rel. Svoboda* v. *Weiler,* 205 Neb. 799 (1980). *Pennsylvania Bank & Trust Co.* v. *Dickey,* 232 Pa. Super. 224 (1975). However, because subsurface oil and gas are fugacious, many States regard the fee to be nonseverable and the interests in the minerals to be incorporeal hereditaments, profits à prendre or chattels real but, nevertheless, personalty flowing from an interest in the land. *Meeker* v. *Ambassador Oil Co.,* 308 F.2d 875, 882 (10th Cir. 1982). *State* v. *Superior Court,* 113 Ariz. 248 (1976). *Callahan* v. *Martin,* 3 Cal.2d 110 (1935). *People ex rel. Hargrave* v. *Phillips,* 394 Ill. 119 (1946). *Baker* v. *Vanderpool,* 296 Ky. 663 (1944). *Shaw* v. *Watson,* 151 La. 893 (1922). *Rist* v. *Toole County,* 117 Mont. 426 (1945). *State* v. *Kirchner,* 185 Okla. 129 (1939). *Toothman* v. *Courtney,* 62 W.Va. 167 (1907). *Oregon Basin* v. *Ohio Oil,* 70 Wyo. 263 (1952). See generally 1A Summers, The Law of Oil and Gas § 153 (1954); 3 Summers, *supra,* § 554 (1958); 3A Summers *supra,* § 572 (1958); 1 Williams and Meyers, Oil and Gas Law §§ 202, 203 and 212-214 (1981); Annot., 90 A.L.R. 770 (1934); Annot., 131 A.L.R. 1371 (1941); Woodward, Ownership of Interests in Oil and Gas, 26 Ohio St. L.J. 353 (1965). Kansas is the only State in which leasehold interests in oil and gas are viewed as neither real property nor tangible personal property; the lease conveys no interest in land "but merely a license to explore, and is personal property — an incorporeal hereditament — a profit a prendre." *Connell* v. *Kanwa Oil Inc.,* 161 Kan. 649, 653 (1946). For tax purposes these interests are not tangible personal property but "partake of the same general nature as patents, franchises, copyrights, rents, wages and incorporeal property generally." *Denver Natl. Bank* v. *State Commn. of Revenue and Taxation,* 176 Kan. 617, 621 (1954).

as such. Under the Massachusetts appellate decisions prior to enactment of the Massachusetts estate tax, of which the Legislature was presumably aware (see *Page* v. *Commissioner of Revenue, supra*), profits à prendre were regarded as realty. Even considering them as ordinary leaseholds, however, a lessee's interest would not have been classified as an intangible interest in personal property. See *Moulton* v. *Commissioner of Corporations & Taxation,* 243 Mass. 129 (1922), holding that for purposes of the Massachusetts income tax provisions then in effect, income from the sale of a lessee's interest in the leasehold was not income derived from an intangible interest in personal property. Moreover, in general, "tax laws are to be strictly construed. The right to tax is not to be implied, but must be plainly conferred. Doubts are resolved in favor of the taxpayer." *DeBlois* v. *Commissioner of Corporation & Taxation,* 276 Mass. 437, 438-439 (1931). *State Tax Commission* v. *Wheatland, supra* at 653. *Moulton* v. *Commissioner of Corporations and Taxation, supra* at 130.

In summary, based upon Massachusetts precedent, authority in other jurisdictions, and the principle of strict construction of statutes dealing with taxation, the conclusion is compelling that the Legislature intended to exclude from the definition of gross estate royalty interests, overriding royalty interests and working interests in out-of-State mineral deposits. We need not decide whether a legislative change expanding the definition to include any such interests would be consistent with Federal due process.

*Judgment affirmed.*