**Matthew OTTOMANO, Defendant-Appellant,**

v.

**UNITED STATES of America, Appellee.**

**UNITED STATES of America, Appellee,**

v.

**Matthew OTTOMANO, Defendant-Appellant.**

**Nos. 72–1139, 72–1093.**

United States Court of Appeals, First Circuit.

Argued Sept. 5, 1972.

Decided Oct. 11, 1972.

Certiorari Denied Jan 15, 1973. See 93 S.Ct. 948.

Frederic A. Johnson, New York City, with whom Seymour Barash, New York City, was on brief, for appellant.

Paul F. Ware, Jr., Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, Mc-ENTEE, Circuit Judge, and HAMLEY,* Senior Circuit Judge.

McENTEE, Circuit Judge.

Matthew Ottomano was tried and convicted for selling cocaine in violation of 26 U.S.C. § 4705(a)[1] and was sentenced to imprisonment for a term of five years. Subsequently, he was called as a defense witness in the trial of an alleged co-conspirator, Michael Russell, and was

---

* Of the Ninth Circuit, sitting by designation.

1. Repealed Pub.L. 91–513, § 1101(b)(3)(A), October 27, 1970, 84 Stat. 1292, effective date of repeal being May 1, 1971, Pub.L. 91–513, § 1105(a).

sentenced to an additional two months imprisonment for his refusal to testify. Ottomano appeals from this contempt order as well as from the denial of his motion to vacate the original sentence. For the reasons set forth below, we affirm the denial of the motion to vacate but reverse the contempt conviction.

Ottomano was tried on two counts of a three count indictment alleging that he and two codefendants, Albert Wassberg and Michael Russell, had conspired to sell and had sold cocaine in violation of 18 U.S.C. § 371 and 26 U.S.C. § 4705(a). In support of the conspiracy count, the indictment charged that Wassberg and Ottomano had participated in the overt act of selling a quantity of cocaine to a federal agent at Logan International Airport in Boston on September 15, 1969. The substantive count alleged Ottomano's participation in the same narcotics transaction.

The evidence at trial revealed that on the afternoon of September 15, 1969, Ottomano and Wassberg met Special Agents Egan and Foderaro at the Eastern Airlines Terminal at Logan International Airport. The four men then proceeded to the Savarin Cocktail Lounge where they engaged in a conversation concerning a cocaine transaction. Wassberg told the agents that the price for a half a kilogram of cocaine would be $10,000, and Ottomano stated that he had cut the cocaine and packaged it in one ounce quantities. Ottomano also stated that he had previously sold some of the cocaine, and both he and Wassberg assured the agents that it was of high quality.

After this discussion, Wassberg and Egan left the cocktail lounge and entered a men's room in the Terminal lobby, while Ottomano and Foderaro remained at their table. In the men's room, Wassberg sold Egan approximately one quarter of a kilogram of cocaine for $5,000. He also told Egan that the latter could always obtain more cocaine by contacting Ottomano. The two then returned to the cocktail lounge where they rejoined Ottomano and Foderaro.

During the ensuing conversation, Ottomano made further statements concerning the quality of the cocaine which Egan had just purchased. Shortly thereafter Egan and Foderaro left.

At the close of the prosecution's case, the court granted Ottomano's motion for a judgment of acquittal on the conspiracy count but denied a similar motion as to the substantive charge. Ottomano was ultimately convicted of selling cocaine in violation of 26 U.S.C. § 4705(a) on the theory that he had aided and abetted the sale by Wassberg.

On March 6, 1972, codefendant Michael Russell was tried on the same indictment before another judge. Ottomano was called as a defense witness but refused to testify, relying on his fifth amendment privilege against self-incrimination.

Ottomano's main contention on appeal is that he could not be constitutionally convicted of selling cocaine on a theory of aiding and abetting after being acquitted of conspiracy to commit the same offense. In making this argument, appellant relies on the double jeopardy clause of the Constitution and the doctrine of collateral estoppel incorporated in that provision by Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

It is clear, of course, that prosecution of a particular defendant for both conspiracy and the substantive offense does not ordinarily constitute double jeopardy. Pereira v. United States, 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954); United States v. Sarno, 456 F.2d 875, 878–879 (1st Cir. 1972). As stated by the court in United States v. Tierney, 424 F.2d 643, 645 (9th Cir.), cert. denied, 400 U.S. 850, 91 S.Ct. 53, 27 L.Ed.2d 87 (1970):

"Conspiracy and aiding and abetting are separate offenses. . . . An acquittal for conspiracy does not preclude conviction for aiding and abetting unless the acquittal results in a finding of fact in favor of the defendant which is essential to the sub-

stantive offense." (Citations omitted.)

It is the contention of the appellant, however, that his acquittal on the conspiracy charge constituted just such an essential determination in his favor. He reasons that on the facts of this case the jury could have found him guilty of aiding and abetting only by inferring an agreement between himself and Wassberg; that the court's judgment of acquittal on the conspiracy count was a determination that such an agreement did not exist; and that his conviction on the substantive charge therefore violated the principles of double jeopardy and collateral estoppel enunciated in Ashe v. Swenson, *supra*.

In advancing these arguments, appellant relies on Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948). In that case, the defendant was tried and acquitted of conspiring to defraud the United States by submitting false invoices to a government rationing board in connection with the sale of a rationed commodity. Subsequently, Sealfon was tried and convicted of aiding and abetting the submission of these same false invoices. In both instances, the government's case turned upon proof that a letter from Sealfon to a codefendant had been written pursuant to an agreement to violate the law. On the basis of an examination of "the facts adduced at each trial and the instructions under which the jury arrived at its verdict," 332 U.S. at 579, 68 S.Ct. at 239, the Court concluded that the first jury's acquittal of the defendant on the conspiracy count could only have been based on a finding that the alleged illegal agreement did not exist. The Court thus determined that Sealfon's conviction on the substantive charge depended upon a fact necessarily adjudicated in his favor at the first trial and therefore reversed his conviction.

In the instant case, we are presented with a different situation. Here, the district court made no findings of fact in acquitting Ottomano of conspiracy. Unlike the situation in *Sealfon,* there is no basis for concluding that the conspiracy acquittal determined in defendant's favor an issue essential to his conviction for the substantive offense. The indictment under which Ottomano was tried alleged his participation in a conspiracy with Wassberg and Russell lasting from September 15 to November 23. The government introduced no evidence at the trial tending to connect Ottomano with Wassberg after September 15, and no evidence at all regarding Russell. The reasonable conclusion, therefore, is that the court acquitted Ottomano on the conspiracy count due to a fatal variance between the facts alleged in the indictment and the proof offered at trial. *Cf.* United States v. Pappas, 445 F.2d 1194 (3d Cir.), cert. denied sub nom. Mischlich v. United States, 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1971). Indeed, the very fact that the judge denied the motion for acquittal on the substantive count militates against the appellant's interpretation of the court's action.

The doctrine of collateral estoppel is applicable only when a factual issue was necessarily determined in a previous litigation. In re Potts, 142 F.2d 883, 889 (6th Cir. 1944), cert. denied, 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945); The Evergreens v. Nunan, 141 F.2d 927, 928 (2d Cir.), cert. denied, 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944); National Lead Co. v. Nulsen, 131 F.2d 51, 57 (8th Cir. 1942), cert. denied, 318 U.S. 758, 63 S.Ct. 533, 87 L. Ed. 1131 (1943). *See* United States v. Kramer, 289 F.2d 909, 913–916 (2d Cir. 1961). In Ashe v. Swenson, *supra*, the Supreme Court described the relevant test as being "whether a rational jury *could* have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." (Emphasis added.) 397 U.S. at 444, 90 S.Ct. at 1194. Nothing in the facts of this case indicates that the court's decision could only have been based on the absence of an agreement between Ottomano and Wassberg. We

therefore conclude that appellant's contentions on this point are without merit.

■ In a related argument, appellant contends that his acquittal on the conspiracy count was an adjudication that he lacked the requisite criminal intent to sustain a conviction for conspiracy and that he therefore could not be convicted of aiding and abetting the substantive offense. In light of our holding above, it is unnecessary to comment further on this contention. We would only note that while specific criminal intent is undoubtedly an element of the crime of conspiracy, United States v. Bradley, 455 F.2d 1181, 1188 (1st Cir. 1972), cert. granted, 407 U.S. 908, 92 S.Ct. 2438, 32 L.Ed.2d 682 (1972), no such specific intent need be proven in a prosecution for the substantive offense of violating 26 U.S.C. § 4705(a). United States v. Bradley, *supra* at 1188; United States v. Jones, 438 F.2d 461, 466 (7th Cir. 1971).

Similarly intertwined with the concept of collateral estoppel is appellant's argument that he was unfairly prejudiced by the admission of an alleged hearsay statement at his trial. Specifically, he complains of agent Egan's testimony as to his men's room conversation with Wassberg, in which the latter indicated that Ottomano would always be a ready source of cocaine. According to the appellant, these statements were no longer properly in evidence once he had been acquitted of the conspiracy count. He therefore argues that the court should have declared a mistrial by analogy to Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), or at least have instructed the jury to disregard the testimony relating to Wassberg's out-of-court statements.

■ It is well established that the applicability of the "co-conspirator" exception to the hearsay rule is not conditioned on the presence of a conspiracy count in the indictment. Rather, the out-of-court statements of one "partner in crime" will be admissible against a confederate when made in furtherance of a joint criminal venture and when there is sufficient evidence independent of these statements to indicate the existence of such a venture. United States v. Mendell, 447 F.2d 639 (7th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 535, 30 L. Ed.2d 542 (1971); United States v. Williams, 435 F.2d 642, 645 (9th Cir. 1970), cert. denied, 401 U.S. 995, 91 S.Ct. 1241, 28 L.Ed.2d 533 (1971); United States v. Branker, 418 F.2d 378 (2d Cir. 1969); United States v. Olweiss, 138 F.2d 798 (2d Cir. 1943). Thus, appellant is thrown back upon his familiar contention that the conspiracy acquittal conclusively established his innocence of any criminal association with Wassberg. We have already rejected this contention for the reasons set forth above.

■ Ottomano also objects to the reception of Wassberg's statements on the ground that his sixth amendment right to confrontation was thereby violated. Since these statements were fully admissible under a recognized exception to the hearsay rule, appellant's argument is clearly without merit. *See* Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L. Ed.2d 213 (1970).

■■ Finally, we turn to appellant's contempt conviction. We note at the outset that appellant's testimony at his own trial did not constitute a waiver of his fifth amendment privilege against self-incrimination. The great weight of authority is to the effect that waiver of the privilege in one proceeding does not affect the rights of a witness or the accused in another independent proceeding. United States v. Miranti, 253 F.2d 135, 139 (2d Cir. 1958); In re Neff, 206 F.2d 149 (3d Cir. 1953); Poretto v. United States, 196 F.2d 392 (5th Cir. 1952); United States v. Steffen, 103 F. Supp. 415 (N.D.Cal.1951). *But see* Ellis v. United States, 135 U.S.App.D.C. 35, 416 F.2d 791 (1969). The government argues, however, that since Ottomano had already been convicted on the same indictment under which Russell was being tried, he was subjected to no real danger of further incrimination by the

requirement that he testify. We disagree. At the time Ottomano was called to testify at Russell's trial, he had a motion to vacate sentence pending before the district court. Had this motion been granted, Ottomano could conceivably have been retried for the sale of cocaine. In the event of such a retrial, any testimony given by the appellant at Russell's trial would have been admissible against him. Under these circumstances, we cannot say that the possibility of further incrimination was so remote as to deprive appellant of his fifth amendment rights.

The denial of the motion to vacate the conviction is affirmed and the judgment of contempt is reversed.