### State of Vermont v. Michael C. Tedesco

[513 A.2d 1164]

No. 83-204

Present: **Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed March 7, 1986

Motion for Reargument Denied May 19, 1986

134

*William E. Kraham*, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Jean Brewster Giddings* and *J. Eric Anderson* of *Fitts, Olson, Carnahan, Anderson & Bump*, Brattleboro, for Defendant-Appellant.

**Hill, J.** After a trial by jury, defendant appeals his conviction of burglary in the nighttime in violation of 13 V.S.A. § 1201, and grand larceny in violation of 13 V.S.A. § 2501. We reverse.

On the evening of May 9, 1981, a burglary occurred at a home in Bellows Falls, Vermont. Jewelry valued in excess of three thousand dollars and other personal items were stolen during the break-in.

## I.

At defendant's trial the State sought to prove that defendant and Scott Wendell had committed the offenses charged. Only defendant, however, was on trial. In order to prove this joint effort, the state's attorney used testimony from John Lowery III to show that defendant and Wendell had met with Lowery twice before the break-in, had related their plan to burglarize the house, and had attempted to recruit him to join them.

Defendant does not now contest the admissibility of statements that can be attributed to him. See *State* v. *Billado*, 141 Vt. 175, 181, 446 A.2d 778, 782 (1982). He argues instead that Wendell's statements to Lowery were inadmissible and that they contributed to the verdict in this case.

Lowery's testimony showed uncertainty as to which of the two (defendant or Wendell) made the various incriminating statements. Initially, the trial court ruled that only defendant's statements were admissible. The state's attorney, however, argued that the defendant and Wendell were co-conspirators and that statements by either of them were admissible if they pertained to an on-going conspiracy. Ultimately, the trial court accepted the prosecutor's reasoning.

The "co-conspirator rule," so-called, is currently contained in V.R.E. 801(d)(2)(E): "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Rule 801 became effective after the date of trial in the present case, but it "is essentially in accord with prior Vermont law." Reporter's Notes, V.R.E. 801; see *F.R. Patch Manufacturing Co.* v. *Protection Lodge No. 215*, 77 Vt. 294, 326, 60 A. 74, 83 (1905); *State* v. *Thibeau*, 30 Vt. 100, 105 (1858).

Defendant argues that the trial court erred in applying the "co-conspirator rule" because (1) the State did not charge defendant with conspiracy; (2) there was no evidence of a conspiracy other than the statements at issue; and (3) an agreement between defendant and Wendell, even if proved, would not have established a conspiracy in the absence of a third conspirator.

Absence of a formal charge of conspiracy does not preclude the admissibility of declarations of co-conspirators. Such statements may be admissible even in the absence of a conspiracy charge if there is independent evidence of a concert of action in

which the defendant was a participant. *United States* v. *Peacock*, 654 F.2d 339, 349 (5th Cir. 1981); see also *Commonwealth* v. *Stoltzfus*, 462 Pa. 43, 59, 337 A.2d 873, 880-81 (1975). In the present case, the record shows independent evidence, including statements specifically attributed to defendant and allegedly made after the burglary, which, if believed, would establish a concert of action between Wendell and defendant.

■ Defendant contends, however, that *three or more* persons are necessary to form a conspiracy. The statute on which he relies, 13 V.S.A. § 1401, addresses conspiracies to commit certain enumerated crimes.[1] Since the crimes charged in the present case are not among those listed in § 1401, we must look elsewhere for an applicable definition of conspiracy. In *State* v. *Dyer*, 67 Vt. 690, 695, 32 A. 814, 816 (1894), this Court acknowledged the common law crime of conspiracy and noted that it involves a combination of *two or more* persons. See also *State* v. *Stewart*, 59 Vt. 273, 286, 9 A. 559, 567 (1887). In the absence of a statute abrogating it, the common law applies in Vermont. 1 V.S.A. § 271. Thus defendant and Wendell could indeed have engaged in conspiracy.

We, accordingly, conclude that defendant's attack on the trial court's evidentiary ruling must fail.

## II.

Since Wendell was not present at trial, defendant also contends that the State's use of Lowery's testimony to show incriminating statements allegedly made by Wendell violated defendant's right of confrontation guaranteed by the Sixth Amendment to the United States Constitution.

Recently we explained that "[t]he crux of a confrontation clause violation is the lack of an effective opportunity to cross-examine the person whose statement is being used against the defendant." *State* v. *Paquette*, 146 Vt. 1, 4-5, 497 A.2d 358, 361 (1985). This provision, however, does not recognize an absolute or limitless right of cross-examination. "[T]he right to confrontation occasionally must 'give way to considerations of public policy and the necessities of the case.' " *State* v. *Sprague*, 144 Vt. 385, 391, 479 A.2d 128, 131 (1984) (quoting *Mattox* v. *United States*, 156 U.S. 237, 243 (1895)).

---

[1] 13 V.S.A. § 1401 applies "[i]f three or more persons conspire together" for any of several specified criminal purposes.

■ The confrontation clause imposes two restrictions on the admissibility of pretrial statements made by out-of-court declarants. First, the prosecution must show that the declarant is unavailable to testify at trial, thus making use of the prior statements necessary.[2] *Ohio* v. *Roberts*, 448 U.S. 56, 65 (1980). Second, the statements must bear sufficient "indicia of reliability" to show their trustworthiness. *Id.* at 65-66 (quoting *Mancusi* v. *Stubbs*, 408 U.S. 204, 213 (1972)).

■ Prior testimony subject to an opportunity for adequate cross-examination by the defense will ordinarily exhibit sufficient indicia of reliability to allow for its admission at the trial itself. *State* v. *Sprague, supra,* 144 Vt. at 391-92, 479 A.2d at 131-32. When, however, as in the present case, the statements are not made in a prior trial-like adversarial proceeding, a more difficult question arises. See *Dutton* v. *Evans,* 400 U.S. 74 (1970) (plurality opinion upholding use of unsworn pretrial statements; four justices dissented and one concurred in the result).

In *Ohio* v. *Roberts, supra,* 448 U.S. at 66, the United States Supreme Court stated that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception."

■ Statements of co-conspirators that fall within the scope of V.R.E. 801(d)(2)(E) and its federal counterpart, Fed. R. Evid. 801(d)(2)(E), are not hearsay exceptions. They are considered admissions by party-opponents and are not treated as hearsay at all. Yet they can be as incriminating, and as far beyond the defendant's ability to challenge, as any hearsay.

The federal circuits are divided on whether a finding of admissibility under Fed. R. Evid. 801(d)(2)(E) is per se determinative of compliance with the confrontation clause's reliability requirement. Compare *United States* v. *Papia,* 560 F.2d 827, 836 n.3 (7th Cir. 1977); and *Ottomano* v. *United States,* 468 F.2d 269, 273 (1st Cir. 1972), *cert. denied,* 409 U.S. 1128 (1973) (determinative) with *United States* v. *Ammar,* 714 F.2d 238, 255-56 (3d Cir.), *cert. denied,* 464 U.S. 936 (1983); *United States* v. *Perez,* 658 F.2d 654, 660 (9th Cir. 1981); and *United States* v. *Wright,*

---

[2] Given our view that the evidence fails to meet the second prong of the *Roberts* test—indicia of reliability—we need not deal with the issue of Wendell's availability.

588 F.2d 31, 37-38 (2d Cir. 1978), *cert. denied*, 440 U.S. 917 (1979) (not determinative).

We find the position rejecting a per se approach more persuasive. Although hearsay exceptions normally arise from circumstances of special trustworthiness, see McCormick's Handbook on the Law of Evidence 775 (3d ed. 1984), the so-called "co-conspirator rule" is based on other considerations. As noted above, the Vermont Rules of Evidence treat statements by a co-conspirator of a party during the course and in furtherance of the conspiracy as admissions by a party-opponent. See V.R.E. 801(d)(2). "[T]he admissibility of an admission does not depend on trustworthiness." Reporter's Notes, V.R.E. 801(d)(2).

Such evidentiary treatment of co-conspirators' statements rests on the "legal fiction that each conspirator is an agent of the other and that the statements of one can therefore be attributable to all." *United States* v. *Ammar, supra*, 714 F.2d at 255-56. Courts must be wary of stretching a fiction beyond its useful limits. Or as Justice Holmes observed: "When logic and . . . policy . . . conflict with a fiction due to historical tradition, the fiction must give way." *Blackstone* v. *Miller*, 188 U.S. 189, 206 (1903).

Concluding that co-conspirators' statements though admissible under V.R.E. 801(d)(2)(E) are not trustworthy per se for the Sixth Amendment's purposes, we must ask whether the statements challenged in this case bear sufficient indicia of reliability to be admissible.

■ According to Lowery, Wendell made his statements in the context of an effort to recruit Lowery's assistance in a criminal endeavor. Such a recruitment effort, akin to a sales pitch, carries no special likelihood of trustworthiness. The crucial question is whether the circumstances surrounding the statements impart sufficient reliability to them that they may enter as evidence while their declarant bypasses entirely the adversarial process. We conclude that Wendell's statements, given the circumstances in which they purportedly were made, do not rise to the level of probable reliable disclosure necessary to admit them as evidence without permitting defendant to cross-examine Wendell. Cf. Davenport, *The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis*, 85 Harv. L. Rev. 1378, 1395 (1972) (asserting that a co-conspirator's statements, even if against his penal interests, should be considered insufficiently reliable for Sixth Amendment purposes when

made in "those situations in which the declarant is discussing his 'exploits' with his criminal peers or anyone else likely to be in sympathy with him or his cause").

Accordingly, we hold that admission of this evidence violated the confrontation clause of the Sixth Amendment to the United States Constitution. Moreover, we do not find this error to be harmless.

At the time of the burglary defendant shared an apartment in Bellows Falls with JoAnne Davis and Scott Wendell. In December of 1981, defendant ceased living with them, and commenced living with Marsha Turner. This arrangement lasted approximately ten months. Then defendant and Ms. Davis resumed living together and were still doing so when trial began in January, 1983.

John Lowery III, a former friend of defendant and Wendell, lived near the house that was burglarized. He testified at trial that before the break-in defendant and Wendell stopped at his (Lowery's) house and tried to recruit his assistance in a burglary. Lowery also stated that on the morning following the break-in defendant related the events of the burglary to him and to Paul Smith. Smith testified that Lowery had a reputation in the community for untruthfulness. Smith also stated that no such conversation ever occurred in his presence.

During the summer of 1982, Lowery delivered some of the jewelry taken in the break-in to the Bellows Falls chief of police. Lowery stated that he had received it from Davis, who at this time was not living with defendant. Some time afterwards, Davis delivered jewelry, also from the burglary, to a Bellows Falls police lieutenant and said that defendant and Wendell had stolen it during the break-in.

Following defendant's arrest and release on bail, Turner, with whom defendant then was living, attended a conference with defendant and his attorney and offered to testify that defendant had not committed the offenses. At trial, however, after Turner was no longer living with him, she testified that defendant had in her presence admitted committing the crimes. She openly acknowledged her prior inconsistent statement.

At trial Davis testified that she had previously lied and that she and Lowery had plotted unjustly to blame defendant and Wendell. Her testimony, along with that of defendant and two other witnesses, provided the basis of a defense of alibi.

Given the testimony in this case, it cannot be said with sufficient certainty, see *Chapman* v. *California*, 386 U.S. 18, 26 (1967), that the result would have been the same without the inadmissible evidence in question. Based on the record before us, we conclude that defendant's right to confront Wendell was a precondition to a fair trial. Although we view reversal of a criminal conviction as strong medicine, it is a necessary antidote when the conviction is tainted by evidence admitted in violation of a defendant's constitutional rights.

Although defendant raises other claims of error, addressing them is unnecessary in light of our resolution of his confrontation clause claim.

*Reversed and remanded.*