

Andrew R. Field, Montpelier, Vt., for debtor, Tavern Motor Inn.

Peter J. Monte, Young Monte & Lyford, Northfield, Vt., for creditor, appellant, Northfield Sav. Bank.

Austin D. Hart, Dinse Erdmann & Clapp, Burlington, Vt., for intervenor, Northeast Hotel Group of Vermont, Inc.

Joseph C. Palmisano, Barre, Vt., appearance for Anders Estate.

## In re TAVERN MOTOR INN, INC.

### No. 87 Civ. 95.

United States District Court,
D. Vermont.

Dec. 21, 1987.

## MEMORANDUM DECISION

GAGLIARDI, Senior District Judge.

This is an appeal from Bankruptcy Court, District of Vermont (Conrad, J.), pursuant to 28 U.S.C. § 151 and Bankruptcy Rule 8001. Appellant, Northfield Savings Bank ("the Bank") appeals from the determination of the Court below that the Bank was not a lienholder of bankrupt Tavern Motor Inn and therefore was not entitled to a lien on the proceeds of the sale of the Inn.[1] *In Re Tavern Motor Inn, Inc.*, 71 B.R. 599 (Bankr.D.Vt.1987). Because we find that the court below erred in its analysis of the governing principles of Vermont law, we reverse and remand for proceedings not inconsistent with this opinion.

### Background

On December 15, 1980, the debtor, Tavern Motor Inn, Inc., ("Tavern") purchased

---

1. The Bankruptcy Court approved the sale of Tavern under 11 U.S.C. § 363(b) free and clear of all liens. All liens existing before the sale attached to the proceeds of the sale.

from Avery Inns of Vermont the Tavern Motor Inn. On that same day, and in connection with Tavern's purchase, it borrowed $100,000 from the Bank, and as security for the loan, Tavern executed a collateral assignment of "all rents, income or profits arising from such lease, its options and renewals, together with all rents, income and profits from the use and occupation of the premises described in the lease...." This arrangement was memorialized by a Promissory Note, a Loan Agreement, and an Assignment of Lease as Collateral. The Assignment was duly recorded in the City of Montpelier land records on the same day, in compliance with Vt.Stat. Ann. tit. 27 § 409 (1975 & Supp.1987).[2]

Appellant argued that this arrangement gave rise to either an equitable mortgage or lien on the debtor's real property or that a security interest in real property was created giving the Bank the status of lienholder. The Bankruptcy Court found that the elements of an equitable lien, as defined by Vermont law, did not exist. 71 B.R. at 605. The court also found that in this situation the collateral assignment of the lease and the future rents generated by the lease and the use of the premises did not create a security interest in real property, but instead a security interest, as defined by Article 9 of the Uniform Commercial Code, in personal property. 71 B.R. at 606–7; Transcript of Hearing, Sept. 29, 1986, page 44. This court agrees with the lower court's determination that no equitable mortgage or lien existed, for the reasons given by the Bankruptcy Court. We now turn to a discussion of whether the operative documents created a security interest in real property.

### Discussion

The standard of review to be applied is governed by Bankruptcy Rule 8013 which states that findings of fact made by a Bankruptcy Judge in a core proceeding are not to be overturned unless clearly erroneous.[3] The clearly erroneous standard applies even when the lower court's findings of fact are based on documentary evidence, rather than determinations of credibility. *Anderson v. City of Bessemer*, 470 U.S., 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Questions of law are reviewed on a de novo basis. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1307 (5th Cir.1985).

The issue here is whether the operative documents discussed above gave rise to a lien on debtor's real property within the meaning of the governing section of the Bankruptcy Code ("the Code"). In interpreting these documents we are guided by the principle that "[w]here the terms of a writing ... are plain and unambiguous there is no room for construction and it is to be given effect according to its language." *In Re Pirie's Estate*, 116 Vt. 159, 71 A.2d 245, 248 (1950).

The Code defines the term lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. 101(33). The legislative history of this subsection explains the definition.

> The definition is ... very broad.... In general, the concept of liens is divided into three kinds of liens: judicial liens, security interests, and statutory liens.

House Report No. 95–595, 95th Cong. 1st Sess. 311–14 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6268–6271.

The Code defines security interest as a "lien created by an agreement." 11 U.S.C. 101(45). Therefore, the question of whether appellant had a lien on the real property of Tavern must be determined by whether there was an agreement to create an interest in real property to secure payment of a debt. The existence of the agreement, and its purpose as security for the debt, is

---

2. The statute states:

An assignment of or any agreement affecting the rights or interest of a landlord or owner of real property occupied by a tenant or sharecropper shall be recorded in the land records of the town in which the property is situated. If not so recorded the same shall bind only the parties thereto.

3. The term core proceeding is defined in 28 U.S.C. § 157(b)(2). Core proceedings arise in Title 11 cases or arise under Title 11. 1 *Collier on Bankruptcy* ¶ 3.01(2)(b)(ii) (15th ed. 1987).

evident from an examination of the documents.

The promissory note is evidence of the debt itself. The loan agreement states that the collateral assignment of the lease will be executed as security for the loan, thus satisfying the requirement of an agreement to create an interest to secure payment. The only question remaining is whether the property in which the interest was created was real or personal property.

The nature of the property interest must be determined by an examination of State law. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979); *In Re STN Enterprises, Inc.,* 47 B.R. 315, 318 (Bankr.D.Vt.1985). The definition of real property in Vermont includes "... lands, tenements, and hereditaments and all rights thereto and interests therein...." Vt.Stat.Ann. tit. 1 § 132 (1985 & Supp.1987). Appellant argues that the collateral assignment of the lease, the promissory note, and the loan agreement gave it a security interest in the right to receive future rents, which right is a hereditament, within the meaning of Vt.Stat.Ann. tit. 1 § 132.

The court below found that the right to receive future rents was not a hereditament but "a mere chose in action for the remaining, if any, unpaid rent...." 71 B.R. at 606.

The courts in Vermont have never expressly ruled on the issue of whether the right to unaccrued rent on a lease of real property is a hereditament within the meaning of Vt.Stat.Ann. tit. 1 § 132. Under these circumstances, we are instructed by statute to look to the common law for guidance:

> So much of the common law of England as is applicable to the local situation and circumstances and is not repugnant to the constitution or laws shall be laws in this state and courts shall take notice thereof and govern themselves accordingly.

Vt.Stat.Ann. tit. 1 § 271; *see also State v. Tedesco,* 147 Vt. 133, 513 A.2d 1164, 1166 (1986) ("In the absence of a statute abrogating it, the common law applies in Vermont.")

The Bankruptcy Court's characterization of the right to receive future rents is in conflict with the common law, and the majority of states confronting this issue.

Blackstone defined an incorporeal hereditament as "a right issuing out of a thing corporate (whether real or personal)...." 2 W. Blackstone, Commentaries *21. Blackstone listed rents as one of the ten principal incorporeal hereditaments and stated that they must issue out of lands and tenements corporeal. 2 Blackstone, *Supra,* at *21 and *41. Because the language in the assignment covered both rents arising from the lease and rents arising from the use of the premises described in the lease, Blackstone's definition of hereditaments is applicable here. *See also* Tiffany, *The Law of Real Property,* § 881 (3rd ed. 1939) ("An assignment of rent already due is an assignment of a mere chose in action while an assignment of the rent, that is, of the right to the installments as they come due in the future, is properly not an assignment of a chose in action, but is a transfer of an interest in land."); 66 Am. Jur.2d *Records and Recording Laws* § 65 (1973 & Supp.1987) ("An assignment of rents to accrue from the leasing of realty is an incorporeal hereditament, an incident to an estate in land, and such a transfer of an interest in realty as to come within the operation of ... recording laws...."); 49 Am.Jur.2d, *Landlord and Tenant* § 515 (1970 & Supp.1987) ("Rent to accrue ... is an incident of the reversion.... Logically, if rent to accrue is an incident of the reversion, it should be regarded, not as a mere chose in action, but as a chattel real."); *Davisson v. Commissioner of Revenue,* 18 Mass.App.Ct. 748, 470 N.E.2d 413, 416 (1984) (the right to future rent payments is an interest in real estate); *Denney v. Teel,* 688 P.2d 803, 809 (Okla.1984) (non-participating royalty interests in oil and gas leases analogized to the incorporeal hereditaments of common law rent); *James v. James,* 58 N.C.App. 371, 293 S.E.2d 655, 657 (1982) (unaccrued rents are incorporeal hereditaments incident to and connected with an estate in land); *Smith v. Smith,* 56

**662**

Haw. 295, 535 P.2d 1109, 1115-6 (1975) ("We are in accord with the common law rule that the right to rent to accrue on a lease for the use and occupancy of real property is an incorporeal hereditament and is incident to an estate in land, the transfer of which is a transfer of an interest in realty."); *Valley National Bank of Arizona v. Avco Develop. Co.*, 14 Ariz.App. 56, 480 P.2d 671, 675 (1971) (the right to rent to accrue on a lease of real property is an incorporeal hereditament); *Kahn v. Deerpark Investment Co.*, 115 Ill.App.2d 121, 253 N.E.2d 121, 124 (1969) (assignment of unaccrued rents is a conveyance of an interest in real property); *Tanner v. Olds*, 29 Cal.2d 110, 173 P.2d 6, 9 (1946) (royalty interest in oil wells are real property interests analogous to the right to receive future rents.); *Ambrozich v. City of Eveleth*, 200 Minn. 473, 274 N.W. 635, 640 (1937) (unaccrued rents are incorporeal hereditaments); *Schmid v. Baum's Home of Flowers*, 162 Tenn. (9 Smith) 439, 37 S.W. 2d 105, 109 (Tenn.1931) (the right to future rents is a hereditament and not a chose in action).

Because we must adhere to the common law in Vermont, we find that the right to receive future rent is an hereditament included in the definition of real estate under Vermont law. Vt.Stat.Ann. tit. 1 § 132 (1985 & Supp.1987). As a result, we hold that the Bank had a security interest in real property within the meaning of 11 U.S.C. § 101(45), entitling it to a lien on the real property of Tavern within the meaning of 11 U.S.C. § 101(33). Therefore, the Bank is entitled to share in the proceeds of the sale of Tavern.

Reversed and remanded for proceedings not inconsistent with this opinion.

So Ordered.