UNITED STATES of America

v.

**TRIUMPH CAPITAL GROUP, INC. et al.**

**No. CR. 3:00CR217(AHN).**

United States District Court, D. Connecticut.

April 18, 2002.

Nora R. Dannehy, Thomas V. Daily, David A. Ring, U.S. Attorney's Office, Hartford, CT, John H. Durham, Michael

E. Runowicz, William J. Nardini, U.S. Attorney's Office, New Haven, CT, Mark G. Califano, U.S. Attorney's Office, Bridgeport, CT, Linda B. Bridgman, U.S. Securities & Exchange Comm., Boston, MA, David J. Stander, U.S. Department of Justice Criminal Div., Washington, DC, for U.S.

Eathan A. Levin–Epstein, Robert A. Richardson, Garrison levin–Epstein Chimes & Richardson, New Haven, CT, Tracy A. Miner, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Richard M. Egbert, Law Office of Richard M. Egbert, Boston, MA, William F. Dow, III, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, Tracey A. Miner, Keith P. Carroll, R. Robert Popeo, Cristina D. Hernandez–Malaby, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, Donald J. McCarthy, Jr., McCarthy, Schuman & Coombes, Hartford, CT, Richard M. Asche, Russell M. Gioiella, Jack T. Litman, Todd B. Terry, Litman, Asche & Gioiella, New York City, John M. McKenna, Goodman, Rosenthal & McKenna, West Hartford, CT, George C. McMahon, North Quincy, MA, Jeremiah F. Donovan, Terry Donovan, Old Saybrook, CT, for Defendants.

## *RULING ON MOTIONS*
## *FOR SEVERANCE*

NEVAS, District Judge.

This is a multi-defendant, multi-count public corruption case arising out of the activities of the former Connecticut State Treasurer, Paul J. Silvester. Pending before the court are severance motions of all five defendants, Triumph Capital Group, Inc. ["Triumph"], Frederick W. McCarthy ["McCarthy"], Charles B. Spadoni ["Spadoni"], Lisa A. Thiesfield ["Thiesfield"], and Ben F. Andrews ["Andrews"]. Specifically, Andrews seeks to be tried separately from McCarthy, Triumph, Spadoni and Thiesfield [the "Triumph Defendants"] and the Triumph Defendants seek to be tried separately from Andrews. McCarthy seeks a trial separate from all other defendants. Triumph wants to be tried separately from Spadoni on the two RICO counts and the obstruction of justice count. Finally, Spadoni seeks to have his trial severed from McCarthy's.

For the following reasons, the motions [docs. # 273, # 288, # 299, # 301, and # 364] are DENIED.

### *FACTS*

In count one of the twenty-four count superseding indictment (the "indictment") the Triumph Defendants and Andrews are charged with violating RICO, 18 U.S.C. § 1962(c). Count two charges the five defendants with a RICO conspiracy in violation of 18 U.S.C. § 1961(d). These counts allege that the defendants and two other individuals, Paul J. Silvester ("Silvester"), the former Connecticut State Treasurer, and his close associate Christopher J. Stack ("Stack"), neither of whom are named as defendants in this case, were members of an association-in-fact enterprise and conducted and participated directly or indirectly in the enterprise's affairs through a pattern of racketeering activity consisting of bribery, aiding and abetting bribe receiving, obstruction of justice and witness tampering. The indictment charges that Andrews and the Triumph Defendants corrupted the Connecticut pension investment process by soliciting and paying bribes, rewards and gratuities as consideration for pension fund investments and by funneling campaign contributions to the "Silvester for State Treasurer" Campaign in exchange for the investment of state pension assets.

More particularly, the government alleges that Silvester and Stack had a corrupt

arrangement whereby, in return for Silvester's investment of state pension assets with a firm or fund, Silvester directed that firm or fund, including Triumph, to compensate Stack as a consultant and Stack paid Silvester a portion of those consultant fees. It further alleges that Andrews received a consulting contract from a firm or fund in return for Silvester's investment of state pension assets, split the fees with Stack and then Stack kicked back a portion of the money he received to Silvester. In addition, Thiesfield and Stack allegedly accepted consulting contracts valued at approximately $ 2 million from Triumph, McCarthy and Spadoni as consideration for Silvester's investment of state pension assets with a Triumph fund. Further, McCarthy, Spadoni and Triumph allegedly paid $25,000 to Thiesfield and gave financial support to the "Silvester for State Treasurer Campaign" in exchange for an investment of state pension assets in a Triumph-related investment fund.

Finally, all of the defendants allegedly attempted to conceal Silvester's role in sharing in the corrupt payments and their own participation in the criminal activity through obstruction of justice or witness tampering. Specifically, Spadoni and Triumph allegedly obstructed justice by deleting, overwriting or destroying documents and information stored on a laptop computer and diskettes and Andrews allegedly tampered with a witness by counseling and intimidating her to falsely testify before a federal grand jury that the money she contributed to the Silvester for State Treasurer Campaign was her own money.

In the remaining twenty-two counts of the indictment, the Triumph Defendants are named together in six counts alleging violations of 18 U.S.C. §§ 1343 and 1346, mail/wire fraud/theft of honest services (counts 16, 17, and 20 through 23). McCarthy, Spadoni and Triumph are

named as codefendants in two counts alleging violations of 18 U.S.C. § 666(a)(2), theft/bribery concerning programs receiving federal funds (counts 15 and 19). Spadoni and Triumph are charged together in one count alleging obstruction of justice in violation of 18 U.S.C. § 1503 (count 24). Thiesfield is charged independently in two counts alleging a violation of § 666(a)(1)(B) (counts 14 and 18). And Andrews is named as the sole defendant in eleven counts: two counts charging violations of § 666 (counts 3 and 7); six counts charging mail/wire fraud/theft of honest services in violation of 18 U.S.C. §§ 1341, 1343 and 1346 (counts 4 through 6 and 8 through 10); one count charging conspiracy to laundering money in violation of 18 U.S.C. § 1956(h) (count 11); one count alleging false statements in violation of 18 U.S.C. § 1001 (count 12); and one count alleging witness tampering in violation of 18 U.S.C. § 1512(b)(1) (count 13).

### STANDARD

A court considering severance motions must undertake a two-part inquiry. First, the court must determine whether the defendants were properly joined under Rule 8(b). It must then consider whether joinder substantially prejudices any defendant.

 Rule 8(b) provides that multiple defendants (1) may be charged in the same indictment if they are alleged to have participated in the same acts or transactions constituting an offense or offenses, (2) may be charged in one or more counts together or separately and (3) do not all need to be charged in every count. Whether joinder is proper depends largely on the facial allegations in the indictment. *See Schaffer v. United States*, 362 U.S. 511, 513–14, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir.1988); *United States v. Gallo*, 668 F.Supp. 736, 748 (E.D.N.Y.1987). Joinder

is appropriate "where two or more persons' criminal acts are unified by some substantial identity of facts or participants or arise out of a common plan or scheme." *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir.1989) (quoting *United States v. Porter*, 821 F.2d 968, 972 (4th Cir.1987)). Joinder is not permitted when the connection between different groups is limited to a few individuals common to each, but where the individuals commit separate acts that involve them in separate offenses with no common aim. *See United States v. Carrozza*, 728 F.Supp. 266, 270 (S.D.N.Y. 1990), *aff'd*, 956 F.2d 1160 (2d Cir.1992).

■ Joinder of multiple defendants in RICO prosecutions is particularly appropriate even if each defendant is charged with committing different predicate acts as part of the alleged pattern of racketeering activity. Indeed, where a series of acts are properly alleged as a pattern of racketeering activity, those acts "constitute part of a 'series of acts or transactions constituting an offense' within the meaning of Rule 8(b)." *United States v. Weisman*, 624 F.2d 1118, 1129 (2d Cir.1980). Moreover, in RICO prosecutions, there is little danger of prejudice from spillover evidence because evidence is generally admissible against all RICO defendants to prove the existence and nature of the racketeering enterprise and the relationship and continuity of the predicate acts which is needed to establish a pattern of racketeering. *See United States v. Diaz*, 176 F.3d 52, 103 (2d Cir.), *cert. denied*, 528 U.S. 875, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999). In essence, if the RICO charge is valid, "an indictment charging the substantive crimes alleged as predicate acts along with the RICO claim satisfies the requirements for valid joinder under Rule 8(b)." (*United States v. Rastelli*, 653 F.Supp. 1034, 1041 (E.D.N.Y.1986)); *United States v. Persico*, 621 F.Supp. 842, 851 (S.D.N.Y.1985)

(same); *see also United States v. Castellano*, 610 F.Supp. 1359, 1396 (S.D.N.Y.1985) (noting that a conspiracy charge "presumptively satisfies Rule 8(b)").

■ Moreover, where a RICO count sufficiently alleges a pattern of racketeering activity, the defendants charged in the RICO counts can be properly joined in an indictment with defendants who are only charged in the substantive counts relating to the racketeering activity. *See United States v. Cervone*, 907 F.2d 332, 341 (2d Cir.1990); *United States v. Weisman*, 624 F.2d at 1129; *United States v. Gallo*, 668 F.Supp. at 748.

■ Nonetheless, despite the preference in the federal system for joint trials of defendants who are indicted together, *see Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), Fed.R.Crim.P. 14 permits severance where a defendant will be substantially prejudiced by joinder. *See United States v. Amato*, 15 F.3d 230, 237 (2d Cir.1994). But a defendant seeking severance under Rule 14 bears a heavy burden of establishing that substantial prejudice would result from his or her joinder with other defendants. *See id.* Under Rule 14, severance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *See Zafiro v. United States*, 506 U.S. at 539, 113 S.Ct. 933.

■ But prejudice alone is not enough to require severance. *See United States v. Diaz*, 176 F.3d at 104 (noting that limiting instructions will often suffice to cure prejudice); *United States v. Cervone*, 907 F.2d at 341 (noting that a defendant must show prejudice so substantial as to amount to a miscarriage of justice to reverse a denial of severance under Rule 14).

Indeed, spillover prejudice that could result where evidence is admissible against one defendant, but not against others does not require separate trials. *See United States v. Rucker,* 586 F.2d 899, 902 (2d Cir.1978).

In addition, a defendant cannot meet his burden under Rule 14 by showing that he would have a better chance of acquittal if he were tried alone. *See Zafiro v. United States,* 506 U.S. at 540, 113 S.Ct. 933. Differing levels of culpability and proof are inevitable in any multiple defendant trial and, standing alone, are insufficient grounds for separate trials. *See United States v. Torres,* 901 F.2d 205, 230 (2d Cir.1990). In fact, the Second Circuit has squarely held that severance is not required even where one of several codefendants is tried for a crime not committed by another codefendant, *see United States v. Hernandez,* 85 F.3d 1023, 1029 (2d Cir.1996), or where codefendants have mutually antagonistic defenses, *see United States v. Harwood,* 998 F.2d 91, 95–96 (2d Cir.1993), or where joinder would cause a lengthy trial containing complex factual and legal issues. *See United States v. Diaz,* 176 F.3d at 104–05; *United States v. Locascio,* 6 F.3d 924, 947 (2d Cir.1993). Likewise, the Second Circuit has repeatedly recognized that it is constitutionally permissible to have joint trials involving defendants who are only marginally involved and defendants who are heavily involved. *See United States v. Locascio,* 6 F.3d at 947. "[E]ven where the risk of prejudice is high, measures less drastic than severance, such as limiting instructions, will often suffice to cure any risk of prejudice." *United States v. Diaz,* 176 F.3d at 104 (internal quotation marks and citations omitted).

In determining whether severance should be granted, courts in this circuit have considered a number of factors, including: (1) the number of defendants; (2) the number of counts; (3) the complexity of the indictment; (4) the estimated length of trial; (5) disparities in the amount or type of proof offered against each defendant; (6) disparities in the degrees of involvement by each defendant in the overall scheme; (7) possible conflict between various defense theories or trial strategies; and (8) prejudice from evidence admitted against co-defendants which is inadmissible or excluded as to a particular defendant. *See United States v. Segura,* No. 99cv85, 2000 WL 1849723, at *4 (D.Conn. Nov. 29, 2000); *United States v. Gatien,* No. 96cr430, 1997 WL 661138, at *2 (E.D.N.Y. Oct. 20, 1997); *United States v. Upton,* 856 F.Supp. 727, 736 (E.D.N.Y. 1994); *United States v. Gallo,* 668 F.Supp. at 749.

"The ultimate question for the district court is whether the jury will be able to 'compartmentalize' the evidence presented to it, and distinguish among the various defendants in a multi-defendant suit." *United States v. Abrams,* 539 F.Supp. 378, 381 (S.D.N.Y.1982); *see also United States v. Segura,* 2000 WL 1849723, at *4 (noting that the court must determine if the jury will be reasonably able to keep the evidence separate and attribute it accurately to each defendant). The decision whether to grant a severance is committed to the sound discretion of the trial court and is virtually unreviewable on appeal. *See United States v. Zackson,* 6 F.3d 911, 922 (2d Cir.1993).

## DISCUSSION

### A. *Motions of Andrews and the Triumph Defendants*

Andrews and the Triumph Defendants claim that they should be tried separately because the indictment improperly joins two separate and distinct conspira-

cies, one involving Andrews, Silvester and Stack, and the other involving the Triumph Defendants, Silvester and Stack. They assert that the two separate conspiracies do not involve the same acts or transactions, but rather allege acts or transactions that occurred at different times, involved different investments in different funds and different business arrangements. They also claim that there is no allegation that the Triumph Defendants knew about, participated in or contributed to Andrews's alleged scheme and vice versa.

The defendants further assert that severance is required to avoid the substantial spillover prejudice they would suffer if they are tried together. This is particularly so, they argue, because the only connection between the two alleged conspiracies is that they both involve Silvester and Stack and thus there is a very real danger that the jury will find them all guilty merely by association. They also contend that it will be very difficult and confusing for a jury to distinguish and separate the complex evidence relating to the different conspiracies as well as the evidence relating to Andrews's relationship with Silvester and Stack and the evidence relating to the Triumph Defendants' relationship with those individuals. They maintain that separate trials would not require more of the court's time than a joint trial because even in a joint trial before one jury the court will be required to try two separate cases.

In opposition, the government maintains that joinder is proper as a matter of law because the indictment properly charges all defendants together in facially sufficient RICO and RICO conspiracy counts. *See United States v. Weisman,* 624 F.2d at 1129; *United States v. Bagaric,* 706 F.2d 42, 69 (2d Cir.1983). The government further contends that the defendants have not sustained their burden of showing that

severance is required to avoid substantial prejudice. The court agrees.

■ The Second Circuit has upheld the propriety of joinder in cases such as this which allege RICO and RICO conspiracy charges against all defendants combined with various other substantive crimes against the defendants individually. *See United States v. Cervone,* 907 F.2d at 341. This is so even where the allegations against the defendants are factually distinct, the defendants had no direct contact with each other in relation to the alleged conspiracy and the acts of the defendants in furtherance of the alleged conspiracy occurred during chronologically distinct periods of time. *See United States v. Nerlinger,* 862 F.2d at 973. For Rule 8(b) purposes, joinder is permissible if the indictment alleges one facially sufficient RICO violation or one facially sufficient RICO conspiracy. *See United States v. Gallo,* 668 F.Supp. at 748. Thus, the defendants' claim that the evidence establishes two separate and distinct conspiracies is not relevant to the propriety of joinder, but is a question of fact to be resolved by the jury. *See United States v. Nerlinger,* 862 F.2d at 972.

■ The defendants have also not sustained their burden of establishing that severance is necessary to prevent substantial prejudice. It is well settled that severance is not required even if, as the defendants argue, the evidence against some of them is stronger and more compelling than the evidence against others. *See, e.g., United States v. Locascio,* 6 F.3d at 947. Joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible. *See id.; see also United States v. Cardascia,* 951 F.2d 474, 483 (2d Cir. 1991) ("[D]isparity in the quantity of evidence and of proof of culpability are inevit-

able in any multi-defendant trial, and by themselves do not warrant severance.").

Severance is also not required to avoid prejudicial spillover evidence. This is not a case where one or more of the defendants are charged in only a few of many counts or are involved in only a small portion of the evidence. *See United States v. Gilbert,* 504 F.Supp. 565, 566 (S.D.N.Y. 1980). The defendants here are all charged with participating in the same criminal acts—RICO and RICO conspiracy. Thus, the bulk of the evidence pertaining to the acts of each of the Triumph Defendants will be admissible against Andrews and the evidence pertaining to Andrews will be admissible against the Triumph Defendants for purposes of proving the alleged RICO enterprise, the pattern of racketeering, and the RICO conspiracy. This is so whether or not a specific piece of evidence pertains only to the conduct of one defendant. Moreover, neither Andrews nor the Triumph Defendants have pointed to any evidence that would be admissible against only one, but not all of them. But even if they had done so, any prejudice resulting from such evidence could be cured by a limiting instruction.

There is also no merit to the defendants' other claims of prejudice. Because all of the defendants have been charged together in the RICO counts, a joint trial will be the most efficient use of judicial resources. In addition to the fact that evidence of the individual acts of each defendant will be admissible against the other defendants, there is apparently a great deal of technical evidence relating to pension fund investing that would have to be duplicated if there were separate trials. It is also apparent that a significant portion of the evidence pertaining to the documents that were allegedly deleted intentionally from the laptop computer relates to Andrews and his company, and thus the evidence relating to the search of the laptop computer, assuming it's admissible,[1] would have to be duplicated if there were separate trials.

Finally, neither the indictment nor the evidence is so complex that a jury will not be able to "compartmentalize" and keep separate the specific evidence and charges against each defendant. *See United States v. Abrams,* 539 F.Supp. at 381; *see also United States v. Branker,* 395 F.2d 881, 887–88 (2d Cir.1968).

In sum, none of the arguments made by Andrews and the Triumph Defendants convince the court that they will be substantially prejudiced by joinder.

## B. *McCarthy's Motion to Sever*

■ McCarthy argues that he should be severed from Andrews because the two never participated in the same act or transaction or in the same series of acts or transactions constituting the offense. He also argues that he should be tried separately from the other Triumph Defendants because a joint trial would compromise his trial rights and prevent the jury from making a reliable judgment about his guilt or innocence. He maintains that, with the exception of the obstruction of justice charge against Spadoni and Triumph, all of the charges against the Triumph Defendants stem from two sets of events: (1) a payment of $25,000 to Thiesfield by Triumph pursuant to a consulting contract, and the provision of "financial support" to the Silvester campaign through an alleged agreement by Triumph and McCarthy to raise $100,000 for the Connecticut Republi-

---

**1.** Triumph, Spadoni and McCarthy have moved for blanket suppression of evidence obtained pursuant to the search and seizure of the laptop computer, including evidence that documents were deleted. That motion is currently under advisement.

can Party; and (2) Triumph's decision to enter into consulting contracts with Thiesfield and Stack after Silvester left office. McCarthy argues that the amount and type of proof of his involvement in each of these acts is much more limited and considerably different from the evidence against the other Triumph Defendants. He further claims that there is a significant risk of spillover prejudice because he is the founder and controlling shareholder of Triumph and is actively involved in its day to day operations and thus the jury is likely to think that he and Triumph are interchangeable and find him liable despite his lack of personal involvement.

McCarthy also argues that he must be tried separately because he needs to offer testimony from Spadoni that is exculpatory and crucial to his defense and Spadoni's testimony would not be available to him in a joint trial. Specifically, McCarthy asserts that Spadoni's testimony is necessary to (1) establish that Spadoni gave McCarthy a legal opinion that his fund raising activities were legal and constitutionally protected; (2) rebut Silvester's testimony as to what Spadoni told Silvester about McCarthy's knowledge of the alleged quid pro quo; and (3) corroborate McCarthy's testimony that he had no knowledge of the alleged quid pro quo.

There is no merit to McCarthy's claims. As previously discussed, McCarthy and Andrews can properly be tried together because they are both charged in the RICO counts. *See United States v. Cervone,* 907 F.2d at 346. Further, the asserted differences in McCarthy's culpability and the evidence against him as compared to the culpability and evidence against the other defendants does not warrant severance. *See United States v. Torres,* 901 F.2d at 230; *United States v. Locascio,* 6 F.3d at 947. Such differences are inevitable in any multiple defendant trial and measures less drastic than severance, such as limiting instructions, will suffice to cure any risk of prejudice. *See United States v. Diaz,* 176 F.3d at 104. Moreover, as the government points out, McCarthy's claim of prejudice from spillover evidence is illusory in light of the fact that the bulk of the evidence pertaining to his codefendants would be admissible against him in a severed trial.

 In addition, McCarthy has not shown that severance is necessary so that he can call Spadoni to testify on his behalf. A defendant seeking severance on such grounds must establish that: (1) the codefendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the testimony would be exculpatory and not cumulative; (3) judicial economy favors severance; and (4) the testimony would not be subject to substantial damaging impeachment. *See United States v. Wilson,* 11 F.3d 346, 354 (2d Cir.1993); *United States v. Bari,* 750 F.2d 1169, 1177 (2d Cir.1984); *United States v. Finkelstein,* 526 F.2d 517, 523–24 (2d Cir.1975).

 McCarthy has not made a sufficient showing that Spadoni's testimony would be exculpatory. But more significant is his failure to establish that Spadoni would not testify at a joint trial or that he would waive his Fifth Amendment privilege and testify at McCarthy's severed trial. "Self serving, conclusory statements that exculpatory witnesses will not testify at a joint trial are not adequate to compel severance." *United States v. Bari,* 750 F.2d at 1177. *See also United States v. Wilson,* 11 F.3d at 354 (holding that the district court did not abuse its discretion in denying severance on the grounds that it would be unrealistic to think that a codefendant would be any more willing to waive his privilege at a separate trial than at a joint trial); *United States v. Finkel-*

*stein,* 526 F.2d at 524 (noting that where a defendant does not plead guilty it is unrealistic to think that he "would be any more willing to waive his constitutional privilege against self-incrimination when called as a witness at a separate trial than he would be willing to insist upon his privilege as a defendant not to take the stand.").

Indeed, McCarthy's argument is based on the unsupported assertion that Spadoni would not have any Fifth Amendment concerns that would be implicated in a severed trial. Even if Spadoni is tried first and waives his Fifth Amendment privilege at his trial, he would still be entitled to invoke his Fifth Amendment privilege if he were called to testify at McCarthy's subsequent trial. *See United States v. Balsys,* 119 F.3d 122, 139 (2d Cir.1997) (holding that "a waiver of the [Fifth Amendment] privilege in one proceeding does not affect the rights of a witness or the accused in another independent proceeding."), *rev'd on other grounds,* 524 U.S. 666, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998). This would be particularly true if Spadoni were convicted in a earlier trial and had a motion or appeal pending that challenged his conviction and could result in a new trial. *See Ottomano v. United States,* 468 F.2d 269, 273–74 (1st Cir.1972); *see also Minnesota v. Murphy,* 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (holding that a defendant's Fifth Amendment privilege continues after he has been convicted).

Finally, McCarthy has made no showing that Spadoni's testimony would not be subject to substantial damaging impeachment or that judicial economy favors severance.

### C. Triumph's Motion For Severance From Spadoni

Triumph moves to be tried separately from Spadoni on the two RICO counts and the obstruction of justice count. It asserts that its criminal liability is derivative and depends on Spadoni's alleged conduct in deleting files and documents from his laptop computer. It maintains that in the absence of severance it cannot defend itself. This is so, it argues, because Spadoni is the only witness it can call to rebut the allegations against it, but that Spadoni will be unable to testify at a joint trial because of his Fifth Amendment privilege. Thus, it maintains that it and Spadoni should be tried separately on these three counts so that Spadoni would be available to testify in its defense.

Triumph's motion fails for the same reasons McCarthy's motion fails. First, Triumph has not shown that Spadoni would not testify at a joint trial. Second, it has not shown that Spadoni would waive his Fifth Amendment privilege and testify on Triumph's behalf if the trials were severed. Third, Triumph has not shown that Spadoni's testimony would be exculpatory. Fourth, judicial economy would not be served by conducting two separate trials in which all of the same evidence would be introduced. Indeed, Triumph's request for severance of only three counts would cause considerable duplication of efforts and evidence. Fourth, Triumph has not established that Spadoni's testimony would not be subject to damaging impeachment.

Finally, Triumph makes the same mistaken assertion that Spadoni would not be entitled to invoke his Fifth Amendment privilege if he is called to testify at Triumph's subsequent trial. *See United States v. Balsys,* 119 F.3d at 139; *Ottomano v. United States,* 468 F.2d at 273–74; *see also Minnesota v. Murphy,* 465 U.S. at 426, 104 S.Ct. 1136.

### D. Spadoni's Motion For Severance

Finally, Spadoni moves to sever his trial from McCarthy's. He maintains that there is a conflict of interest that

results from his prior representation in this case by McCarthy's present counsel, Mintz Levin Cohn Ferris Glovsky & Popeo, P.C. ("Mintz Levin"). Specifically, Spadoni asserts that Mintz Levin obtained confidential and privileged information from him when it previously represented him in this matter and that such information could be used to his disadvantage at a joint trial. Spadoni further asserts that Mintz Levin has a conflict of interest because it is attempting to shift blame from McCarthy to him and portray McCarthy as less culpable. He contends that this violates Mintz Levin's duty of loyalty under Rule 1.9 of the Connecticut Rules of Professional Conduct.

Spadoni says that he will waive the conflict of interest and consent to Mintz Levin's continued representation of McCarthy if severance is granted. However, he will not waive the conflict if he is tried jointly with McCarthy. He maintains that severance rather than disqualification is the most realistic and practical solution to the problems presented by Mintz Levin's prior representation of him.

Assuming for purposes of Spadoni's motion for severance that the claimed conflict of interest exists, the court does not agree that the ethical and constitutional problems presented by joint representation of clients with such asserted divergent interests could be eliminated by severance. Rather, if in subsequent proceedings the court finds that Mintz Levin is conflicted, then disqualification would be the only way to eliminate all of the potential problems caused by the alleged conflict.

Indeed, as the Supreme Court noted, "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing.... [n]ot only at trial but also as to possible pretrial plea negotiations and in the sentencing process." *Holloway v. Ar-*

*kansas,* 435 U.S. 475, 489–90, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). For instance, Mintz Levin's duty of loyalty to both clients could prevent it from exploring plea negotiations for McCarthy and possibly offering his testimony against Spadoni as part of a plea bargain. In addition, if both McCarthy and Spadoni are tried and convicted, Mintz Levin's conflicting loyalties could prevent it from arguing at sentencing that McCarthy was less involved and culpable in comparison to Spadoni and thus entitled to a lesser sentence. *See id.*

Contrary to Spadoni's arguments, severance is not a viable alternative to disqualification in this case if joint representation is found.

### CONCLUSION

For all of the foregoing reasons, the motions for severance (doc. #273, doc. #288, doc. #299, doc. #301 and doc. #364) are DENIED.